IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 14-2559

| | |
|---|---|
| INDIANA PETROLEUM MARKETERS AND CONVENIENCE STORE ASSOCIATION, THORNTON'S INC., RICKER OIL COMPANY, INC., FREEDOM OIL, INC., | } } } } } } |
| Plaintiffs-Appellants, | } } |
| v. | } } |
| ALEX HUSKEY, in his official capacity as Chairman of the Indiana Alcohol and Tobacco Commission, | } } } } |
| Defendant/Appellee. | } } } |

Appeal from the
United States District Court
for the Southern District
of Indiana

No. 1:13-CV-00784-RLY-DML

The Honorable
Richard L. Young, Chief Judge

_____

BRIEF AND REQUIRED SHORT APPENDIX OF PLAINTIFFS-APPELLANTS
INDIANA PETROLEUM MARKETERS AND CONVENIENCE STORE
ASSOCIATION, THORNTON'S INC., RICKER OIL COMPANY INC.,
and FREEDOM OIL, INC.

_____

John R. Maley [IN Atty #14300-89]
*Counsel of Record*
Mark J. Crandley [IN Atty #22321-53]
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433
E-mail:    jmaley@btlaw.com
         mcrandley@btlaw.com

*Attorney for Appellants*

## DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1(a), Plaintiffs-Appellants disclose the following information:

1.     The full name of every party that the attorney represents in the case:  Indiana Petroleum Marketers and Convenience Store Association, Ricker Oil Company, Inc., Thornton's Inc., and Freedom Oil, Inc.

2.     The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear:  Barnes & Thornburg LLP

3.     If the party is a corporation:

    i)     Identify all its parent corporations, if any:  None

    ii)     List any publicly traded company that owns 10% or more of the party's stock:  None

*/s/ John R. Maley*
John R. Maley
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
317.231.7464

*Attorneys for Plaintiffs-Appellants*

i

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................. i

TABLE OF CONTENTS.................................................................... ii

TABLE OF AUTHORITIES ............................................................... iv

JURISDICTIONAL STATEMENT ........................................................ 1

   1.   Statement Concerning District Court's Jurisdiction ......................... 1

   2.   Statement Concerning Appellate Jurisdiction ................................ 1

STATEMENT OF THE ISSUES ........................................................... 1

STATEMENT OF THE CASE............................................................... 3

   A.   Procedural History ............................................................... 3

   B.   Facts ................................................................................ 6

      1.   The Plaintiffs.................................................................. 6

      2.   Indiana Convenience Stores – Authorized, Responsible
          Sellers Of Goods And Services, Including Beer And Wine ...................... 9

         a.   Indiana Compliance History ................................................. 9

         b.   Reasons For Strong Compliance .......................................... 11

      3.   Indiana Package Liquor Stores – Overall Poor Compliance
          With Alcohol Laws ............................................................ 14

         a.   Indiana Survey For Alcohol Compliance .............................. 14

         b.   Nature Of Some Liquor Stores.............................................. 14

      4.   Indiana's Arcane Alcohol Regulatory History And Structure ............... 17

         a.   History Of Sales Of Cooled Beer ......................................... 17

         b.   Cooled Beer Permits Are Authorized For Convenience
            Stores In Unpoliced, Unincorporated Towns, But Not In
            Policed, Incorporated Municipalities ..................................... 20

         c.   Convenience Stores Can Sell Cooled Wine And Wine
            Coolers With Higher Alcohol Content Than Beer, But
            Cannot Cool Beer At Or Before Sale..................................... 21

      d.    Excise Officers Do Not Even Agree On When A "Sale" Occurs ..........23

      e.    Extraordinary Penalties Exist For Violations .....................................25

   5.    The District Court's Findings & Conclusions .........................................25

SUMMARY OF ARGUMENT .....................................................................................26

ARGUMENT .................................................................................................................27

STANDARD OF REVIEW ...........................................................................................27

  A.  The District Court Erred In Failing To Take The Evidence
      Favorably For The Non-Movant Plaintiffs ....................................................28

  B.  The District Court Erred In Its Interpretation Of The Indiana
      Statute Allowing Cooled Beer Sales In Unincorporated Towns .................34

  C.  The District Court Erred In Finding A Rational Basis For
      The Discrimination .............................................................................................37

   1.    The Prohibition On Convenience Stores In Incorporated,
        Policed Municipalities Cooling Beer At Or Before Sale
        Violates The Equal Protection Clause .....................................................37

     a.    Applicable Standards.................................................................................37

     b.    The Defense's Proffered "Rational" Basis For The
         Discriminatory Cooled Beer Prohibition Fails ....................................38

CONCLUSION...............................................................................................................43

CERTIFICATE OF COMPLIANCE.............................................................................44

CERTIFICATE OF SERVICE.......................................................................................45

CIRCUIT RULE 30(d) STATEMENT .........................................................................46

ATTACHED REQUIRED SHORT APPENDIX ........................................................47

# TABLE OF AUTHORITIES

### *Cases*

Baskin v. Bogan,
    __ F.3d __, 2014 WL 4359059 (7th Cir. Sept. 4, 2014) .............................. 38

Buquer v. City of Indianapolis,
    797 F. Supp.2d 905 (S.D. Ind. 2011) ..................................................... 37-38

Chelios v. Heavener,
    520 F.3d 678 (7th Cir. 2008) ................................................................. 27,28

City of Cleburne, Tex. v. Cleburne Living Center,
    473 U.S. 432 (1985) ...................................................................................... 38

Des Vergnes v. Seekonk Water Dist.,
    601 F.2d 9 (1st Cir. 1979) ........................................................................... 37

FCC v. Beach Comm., Inc.,
    508 U.S. 307 (1993) ...................................................................................... 38

Heller v. Doe,
    509 U.S. 312 (1993) ...................................................................................... 38

LaBella Winnetka, Inc. v. Vill. of Winnetka,
    628 F.3d 937 (7th Cir. 2010) ...................................................................... 37

Mitchell v. JCG Industries, Inc.,
    745 F.3d. 837 (7th Cir. 2014) ..................................................................... 39

Prestwick Capital Mgmt. v. Peregrine Financial Group, Inc.,
    727 F.3d 646 (7th Cir. 2013) ................................................................. 27,28

RK Ventures, Inc. v. City of Seattle,
    307 F.3d 1045 (9th Cir. 2002) .................................................................... 37

Sweeney v. Pence,
    __ F.3d __, 2014 WL 4290404 (7th Cir. Sept. 2, 2014) ........................... 28,38

Turner v. Glickman,
    207 F.3d 419 (7th Cir. 2000) ...................................................................... 38

United States v. Carolene Products Co.,
    304 U.S. 144 (1938) ...................................................................................... 42

*United States v. Moore*,
    644 F.3d 553 (7th Cir. 2011) .................................................................. 38,42

## *Rules*

Fed. R. App. P. 26.1(a)   .......................................................................... i

Fed. R. App. P. 32(a)(7)(B) .................................................................. 44

Fed. R. App. P. 32(a)(7)(B)(iii) ........................................................... 44

Circuit Rule 30(a)   .......................................................................... 46

Circuit Rule 30(b)   .......................................................................... 46

Circuit Rule 30(d)   .......................................................................... 46

Circuit Rule 36   .............................................................................. 43

## *Statutes*

U.S. Const., Art. IV, §1   .................................................................. 37

28 U.S.C. §1291   .............................................................................. 1

28 U.S.C. §1331   .............................................................................. 1

28 U.S.C. §1367   .............................................................................. 1

Ind. Code §7.1-1-3-10   ...................................................................... 36

Ind. Code §7.1-1-3-15   ...................................................................... 36

Ind. Code §7.1-1-3-18.5   .................................................................. 36

Ind. Code §7.1-1-3-19   ...................................................................... 36

Ind. Code §7.1-1-3-40   ...................................................................... 36

Ind. Code §7.1-3-4-2(13)   .................................................................. 36

Ind. Code §7.1-3-4-3   .................................................... 20,34,35,36,37,38

Ind. Code §7.1-3-4-4   .................................................... 20,34,35,36,37,38

Ind. Code §7.1-3-5-3   ...................................................................... 18,22

Ind. Code §7.1-3-10-5 ........................................................................ 16

Ind. Code §7.1-3-10-5(6) ................................................................... 16

Ind. Code §7.1-3-20-1 ........................................................................ 36

Ind. Code §7.1-3-20-9 ........................................................................ 36

Ind. Code §7.1-3-20-18 ...................................................................... 36

Ind. Code §7.1-5-10-11 ............................................................. 3,21,22,25

## JURISDICTIONAL STATEMENT

1.  <u>**Statement Concerning District Court's Jurisdiction**</u>

The District Court had jurisdiction under 28 U.S.C. §1331 in that Plaintiffs asserted federal claims arising under the Fourteenth Amendment's Equal Protection Clause and Due Process Clause of the United States Constitution, and sought a declaration of rights and other legal relations under the Constitution and the laws of the United States.  The District Court had supplemental jurisdiction over the State-law claims pursuant to 28 U.S.C. §1367.

2.  <u>**Statement Concerning Appellate Jurisdiction**</u>

Appellate jurisdiction is conferred by 28 U.S.C. §1291.  On June 16, 2014, the District Court entered its "Findings of Fact, Conclusions of Law, and Order" [ECF 162]  On June 20, 2014, the District Court issued an Entry of Judgment in favor of Defendant [ECF 164]  The appeal is from the final judgment that disposes of all claims.  Plaintiffs timely filed their Notice of Appeal in the District Court on July 15, 2014.

## STATEMENT OF THE ISSUES

In an equal protection challenge to an Indiana statute that discriminates against convenience stores, grocery stores, and pharmacies by prohibiting them from cooling their carry-out beer before sale while allowing liquor stores, restaurants, and taverns to do so, the trial court was confronted with Plaintiffs' motion for preliminary injunction and Defendant's motion for summary judgment. In a single written order, the trial court denied the preliminary injunction and

granted the defense summary judgment motion.   Upon *de novo* review of the summary judgment ruling, did the trial court err in granting summary judgment:

(1)     By failing to take the facts and reasonable inferences favorably for the non-movant Plaintiffs, instead conflating the preliminary injunction fact-finding role by weighing the evidence and failing to consider evidence opposing summary judgment;

(2)     In a question of first impression, erroneously interpreting an Indiana statute that allows permits for cold carry-out beer to grocery stores, convenience stores, and pharmacies in unincorporated, unpoliced towns but denies that opportunity to such retailers in policed, incorporated cities; and

(3)     Determining that a rational basis of deterring minors from drinking "cold beer" supports the discriminatory "cooled-beer" prohibition even though

> (a)     the convenience stores, groceries, and pharmacies are permitted to sell uncooled beer and higher-alcohol wine and wine coolers that have been cooled;

> (b)     the convenience stores, groceries, and pharmacies fare better in complying with Indiana alcohol laws than the competitors given the preferential treatment;

> (c)     beer sold by convenience stores, grocery stores, and pharmacies can be cooled in as quickly as one minute; and

(d)    the effect of the discriminatory law is to actually have beer

displayed on floors and shelves that are more accessible to

minors than in refrigerators with doors.

## STATEMENT OF THE CASE[1]

### A.    Procedural History

This   appeal   involves   Plaintiffs-Appellants'   federal   equal   protection

constitutional  challenge  to  Indiana's  prohibition  on  convenience  stores,  grocery

stores, and pharmacies with permits to sell carry-out beer from selling beer that has

been "cooled" by the retailer "before or at the time of sale. . . ."  Ind. Code §7.1-5-10-

11.  Indiana law meanwhile allows competing liquor stores, restaurants, and bars to

sell  carry-out  beer  without  such  "cooled"  restrictions.   Plaintiffs  (like  competing

liquor stores) are, however, permitted by Indiana law to sell higher-alcohol content

beverages, such as wine and wine-coolers, that have been cooled.

Plaintiffs are an Indiana trade association representing convenience stores,

and three companies that own and operate convenience stores in Indiana and have

Indiana permits to sell beer.  For ease of reference given their differing names but

collective  interests,  these  Plaintiffs-Appellants  will  be  referred  to  as  Plaintiffs  in

this brief; the Defendant will be referred to as Defendant.

Plaintiffs brought this action for injunctive relief and declaratory judgment

against the Chairman of the Indiana Alcohol and Tobacco Commission in his official

---

[1] Citations are as follows:  [APP#] refers to the separate Appendix of Appellants' Volume 1
of 1, App1-App260 filed contemporaneously with Appellants' Brief, including excerpts to the
February 20-21, 2014 hearing transcripts.  [ECF] refers to the District Court's docket.  [Sh.
App. #] refers to Appellants' Short Appendix bound with this Brief, 1-38.

capacity. [ECF 1]   After amendments of pleadings, federal claims for violation of equal protection, violation of commerce clause, due process void for vagueness, and Indiana constitutional claims were asserted. [ECF 47]   Plaintiffs ultimately abandoned the commerce clause claim, and no damages claims were ever asserted.[2]

In the District Court, the case proceeded through discovery, including depositions of each Plaintiff and of two defense witnesses. [*See generally*, ECF 62, 64]   Plaintiffs moved for a preliminary injunction [ECF 44], and a two-day evidentiary hearing was held on the motion. [ECF 130, 132]   The District Court, agreeing with Defendant, denied Plaintiffs' request to advance the hearing to a bench trial on the merits. [ECF 131]   No final bench trial was held.

Meanwhile, prior to the preliminary injunction hearing and prior to the dispositive motions deadline, Defendant moved for summary judgment. [ECF 77]   After the two-day preliminary injunction hearing and the availability of transcript, Plaintiffs timely opposed Defendant's motion for summary judgment. [ECF 148]   Shortly thereafter, Plaintiffs timely moved for summary judgment themselves. [ECF 149]

Addressing the Plaintiffs' preliminary injunction motion and the Defendant's summary judgment motion in the same order, the District Court issued what it labeled "FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER" in a single 34-page entry. [ECF 162 (hereafter the "Findings & Conclusions")]   The

---

[2] Originally named as defendants, the State of Indiana and the Indiana Alcohol and Tobacco Commission were dismissed by stipulation of the parties. [ECF 73]   Also, individual plaintiff/consumer Steve Noe was a co-plaintiff, but is not an appellant in this appeal.

Findings & Conclusions set forth findings of fact then conclusions of law, and ruled in favor of Defendant on his motion for summary judgment, and against Plaintiffs on their motion for preliminary injunction. The Findings & Conclusions did not address Plaintiffs' motion for summary judgment. [ECF 162]

Four days later, the District Court issued a brief separate Order stating in part, "It has come to the court's attention that the court's Findings of Fact and Conclusions of Law were issued without a ruling on the Plaintiffs' Motion for Summary Judgment . . . ." [ECF 163] The District Court then denied Plaintiffs' motion for summary judgment "for the reasons explained in the court's Findings of Facts and Conclusions of Law . . . ." [*Id.*] Final Judgment was then entered separately the same day, June 20, 2014. [ECF 164] No post-judgment motions were filed.

The District Court's Findings & Conclusions held that, as a matter of law on Defendant's summary judgment motion, the Plaintiffs' equal protection and due process/void for vagueness claims failed. [ECF 162] The Findings & Conclusions also ruled that the Eleventh Amendment precluded the federal courts from addressing the Indiana Constitutional claims, rejecting Plaintiffs' waiver argument. [ECF 162, pp. 17-21] Plaintiffs have reasserted those State-law claims in an Indiana state court.

Plaintiffs timely initiated this appeal on July 15, 2014. [ECF 165] In this appeal, Plaintiffs seek *de novo* review of a limited, narrow issue: Did the District Court err in granting Defendant's motion for summary judgment on the equal

protection claim by failing to take the facts favorably for the non-movant Plaintiffs, and by errors in interpretation of law?  Plaintiffs do not challenge the Eleventh Amendment ruling, or the void for vagueness due process ruling.  Further, Plaintiffs do not challenge the denial of their motion for preliminary injunction.  The sole issue on appeal is the grant of the Defendant's motion for summary judgment on equal protection.

## B.    Facts

The following statement of facts is taken favorably for the non-movant Plaintiffs upon review of the grant of summary judgment for Defendant.

### 1.    The Plaintiffs

The Indiana Petroleum Marketers and Convenience Store Association is an Indiana association that represents Indiana convenience stores and petroleum marketers, and advances the interests of its members through various programs and services.  It has 115 members accounting for approximately 1,000 retail stores in Indiana. [App67,69-70]  Approximately 75% of those stores have permits and sell beer. [App70]

Freedom Oil, LLC is a family-owned Indiana business operating six convenience stores in Indiana, and several of their stores have permits and sell beer. [App23-24 and App157]  An example of a Freedom location is below at Leesburg, Indiana:



[App139]

Ricker Oil Company, Inc. is an Indiana family-owned business in existence since 1979. [App45]  Ricker's has 49 stores in Indiana, 45 of which have permits for and sell beer, though not cooled beer because of the Indiana statute. [App46-49]  An example of a Ricker's store in Indianapolis is below:



[App137]

Thorntons Inc. has 175 convenience stores in six states including Indiana. [App53-56,165-168]  Approximately 30 stores are in Indiana. [App57,169]  Several

of those sell beer. [App58]  In the other five states in which Thorntons has stores, Thorntons is allowed to and does sell cold beer. [App59]  An example of a Thorntons store in Indianapolis is below:



[App138]

Thorntons builds 8 to 12 new locations per year, and typically closes or sells one or two stores per year. [App169]  Thorntons stopped investing in new stores in Indiana in 2006 solely because of the statutory prohibition on cooling beer and the return on investment that it can earn in other states. [App61]  Without the Indiana statute, Thorntons could build 12-15 new sites in the Indianapolis area, and 5-10 in Lake County. [App62-63]  Thorntons has invested $111 million in new stores in other states since 2007. [App64]  These businesses – as well as other members of IPCA – desire to offer their customers cooled beer. [E.g., App48-50,71-72]

Steve Noe (a co-plaintiff below, not an appellant in this appeal) lives in Richmond, Indiana, near the Ohio border. [App32,183]  Mr. Noe occasionally buys beer for consumption at home. [App39-40]  He prefers to buy cold beer, so will typically buy either at a Richmond liquor store, or in New Paris, Ohio, at a convenience store that sells cold. [App39-40]  His purchases from Indiana

convenience stores are fewer because he cannot buy cold beer there. [App40]  If available, he would purchase cold beer from convenience stores and grocery stores in Indiana as it would be more convenient and less expensive than buying from liquor stores. [App160]  He would like the convenience of one-stop shopping. [App160]  When Noe is in Ohio buying cold beer, he has seen other persons whom he knows to be Indiana residents doing the same thing. [App41]  There is a liquor store close to his home that he will not go into because of fear of safety. [App37-38]

Noe has purchased his preferred beer at a competing Richmond liquor store (cold), an Ohio convenience store (cold), and a Richmond convenience store (warm). [App161-162,33-38]  He paid more at the Richmond liquor store for the same product than at the Richmond or Ohio convenience stores. [*Id.*]

### 2.    Indiana Convenience Stores – Authorized, Responsible Sellers Of Goods And Services, Including Beer And Wine

Indiana's grocery stores, convenience stores, and pharmacies are responsible sellers of alcohol with a superior compliance record to package liquor stores. [App74,116]

### a.    Indiana Compliance History

### i.    Indiana Survey For Alcohol Compliance

Since 2007, Indiana has had an alcohol compliance program to monitor permittees for adherence to Indiana alcohol laws. [App103-112]  According to the State's designated 30(b)(6) witness, this is a good and reliable program, and he has confidence in its results. [App104]  Sometimes called the Survey for Alcohol Compliance or SAC, it involves State excise police sending in a minor to permit

holders of all types to test whether the permittee will sell to the minor. [App103] Results are compiled periodically, including annually, on how each segment of the industry fares (e.g., grocery stores, which include convenience stores, package stores, restaurants, pharmacies, etc.). It is designed to be and is scientific, as set forth in the State Excise Police's Standard Operating Procedures approved by then Superintendent Huskey. [App212, 227-228, 244-249]

Grocery stores have consistently shown better compliance than package stores in this continual government study. [App116] As one report described, package stores are "Among the businesses most willing to sell to minors this year," and grocery stores – which includes convenience stores – "Among the least likely to sell alcohol to minors." [App109-110,120-121] In 2010-2012, package liquor stores were more than twice as likely as grocery stores and drug stores to violate Indiana laws prohibiting sales to minors, with a 6.83% failure rate. [App210]

Indiana's liquor store industry is treated more favorably as to beer and is not subject to any prohibitions on cooling beer. Yet the Indiana liquor store industry's compliance with Indiana alcohol laws is *below* that of grocery stores, convenience stores, and pharmacies. As the Defendant's designated 30(b)(6) witness admitted:

> Q    And who has complied better based on your agency's SAC project in compliance with alcohol laws: grocery stores or package stores?
> A    By the straight-up numbers, the grocery stores [which include convenience stores] have complied better.
>
> Q    Consistently; correct?
> A    Consistently they have, yes.

[App116]

ii.    **Plaintiffs' Stores**

The three Plaintiffs with alcohol permits for their convenience stores in Indiana, comprising almost 100 stores, have a strong compliance record consistent with State Excise's Survey for Alcohol Compliance.  Freedom has had one store cited for selling to a minor, and terminated the employee. [App25-26]  Ricker's has a strong compliance record with Indiana alcohol laws, with four citations across all its many stores. [App29]  No Thorntons in Indiana has been cited for selling to minors. [App60]

b.    **Reasons For Strong Compliance**

There are many reasons that Indiana convenience stores, grocery stores, and pharmacies fare better than Indiana package stores in compliance.  For instance, the nature of convenience stores is that they are clean, well-lit establishments. [E.g., App90]  They are frequented by police, who – like most people – buy fuel and other items at these convenient providers. [App90-92,216-217]  Most convenience stores offer police free coffee and sodas; they want a police presence at their stores. [App173,230-231]   Teachers, coaches, neighbors, and the community at large frequent convenience stores, serving as a deterrent to minors seeking to buy alcohol. [App229-231]  The Defendant did not provide contrary evidence on any of these points. [App229-230]

Unlike many liquor stores, convenience stores are clean, well-lighted establishments not dependent upon alcohol sales for their existence. [App90-92] Convenience stores are frequented by many customers, including police officers, providing a deterrent to minors seeking alcohol.  Major Poindexter, for instance, has

been to a Ricker's store to buy gas and use the restroom. [App90-92]  Ricker's and Thorntons offer free coffee to officers, resulting in numerous visits annually by police. [App142,144]  Indeed a recent photo from a Ricker's store in Indianapolis shows five IMPD officers enjoying complimentary coffee onsite.



[App191]

Ironically, the proffered rational basis for prohibiting "cooled beer" in these stores that are allowed to sell uncooled beer forces these retailers to put the product out in the open on the floor or shelves – more visible to minors – than if it were in a cooler.  For instance, this is from a Casey's store in Martinsville:



[App135]

By contrast, this photograph is from a convenience store in Illinois where beer can be cooled by the retailer, and is thus separated and less accessible in a cooler:



[App124]

### 3. Indiana Package Liquor Stores – Overall Poor Compliance With Alcohol Laws

#### a. Indiana Survey For Alcohol Compliance

As noted, package liquor stores consistently fare poorly in the State Excise Police's compliance survey. The nature of some of these stores is noteworthy.

#### b. Nature Of Some Liquor Stores

Many package stores suffer from traits that can impact compliance. For instance, as the State's designated 30(b)(6) witness confirmed, there are a number of package stores that are not well-lighted outside. [App90-92] There are package stores that are not in good shape. [*Id.*] Package stores are sometimes in neighborhoods that are perceived as dangerous. [App174,37] This example of a

package liquor store is East Race Liquors in South Bend, just blocks from a grade

school, high school, and near a university:



[App255,260]

Package stores have been found in rural trailers in Indiana with no exterior

lighting (save a strand of holiday lights):



[App127]

    Package stores do not sell fuel, and thus do not have police refueling there as convenience stores do. [App251,256-257]  Package stores derive revenue primarily from alcohol sales. [App256]  Many also – despite statutory restrictions on their business – cash checks, including tax refund checks. [App255,258-259]  Package liquor stores – which purportedly have limitations upon them as their "exclusive business" by statute is limited to sale of 10 specified commodities such as liquor, beer, wine, etc. – operate well beyond these limitations.  Ind. Code §7.1-3-10-5.  For instance, the statute allows package liquor stores to only sell "uncooled" soda such as Coke and Pepsi products, Ind. Code §7.1-3-10-5(6), but they routinely sell cold soda in refrigerated machines on their premises, without citation. [App204]

Similarly, contrary to the statutory "exclusive" commodity business, many package liquor stores operate as check-cashing and ATM services, as exemplified by this chain of Victory Liquor stores in Indianapolis, which will cash payroll and government checks for a 1.5% fee and tax checks for a 2.5% fee. [App197-201]  Also, while grocery and convenience stores have a limit on the amount of alcohol they can sell – no more than 25% of revenues – liquor stores can sell without limit, including 180-proof, 90% Everclear hard liquor. [App225,234-235]

### 4.    Indiana's Arcane Alcohol Regulatory History And Structure

#### a.    History Of Sales Of Cooled Beer

Indiana's alcohol regulations – described as "arcane,"[3] "Prohibition-era,"[4] and "peculiar"[5] – are apparently the only ones in the Union with this particular treatment of grocery stores, convenience stores, and pharmacies.  These sources of economic development, and state tax revenue – which fare better than liquor stores in compliance with Indiana's alcohol laws – are prohibited from selling beer that has been "cooled" by the store at or prior to sale.  Indiana's regulations of beer – and its temperature for carryout purchases – go back to a different era, when convenience stores and modern grocery stores and pharmacies did not even exist.

In 1935, the Indiana General Assembly passed the Liquor Control Act, which regulated the sale of alcoholic beverages in the State of Indiana.  In 1941, the

---

[3] "Suit spawns liquor-distribution showdown," *Indianapolis Business Journal*, Sep. 14, 2013, http://www.ibj.com/article?articleId=45088 [App146-149]

[4] *Id.*

[5] "Indiana's peculiar liquor laws may drive you to drink," *Indianapolis Star*, May 18, 2013,   http://www.indystar.com/article/20130518/OPINION08/305180019/Editorial-Indiana-s-peculiar-liquor-laws-may-drive-you-drink [App151-152]

Indiana General Assembly amended the language of the beer dealer's permit to prohibit the holder of the permit from selling alcoholic malt beverages that had been iced or cooled by the permit holder before or at the time of sale. There is no language in the Acts of 1941 that amends the rights of package liquor stores allowing them to sell beer at any temperature. *See id.* at 952-955. The Indiana General Assembly amended the rights of package liquor store dealers in the 1953 Acts, allowing package store owners to sell alcoholic malt beverages upon obtaining a beer dealer's permit.

In 1963, the Indiana Alcoholic Beverage Commission issued Bulletin #149, which provided that package liquor stores would be permitted to sell cold beer for consumption off premises, "provided that such package liquor store dealer is located in a metropolitan area which, in the discretion of the Commission, is such as to afford full and adequate opportunity to police the sale of such cold beer and thereby protect the health, safety and welfare of the people of the state of Indiana." Bulletin #149 allowed some cold beer sales based on the metropolitan location of the permit-holder's business.

The Indiana General Assembly later incorporated the language of Bulletin #149 into the 1979 Acts, allowing package liquor store dealers, restaurants, and bars to offer cold beer for carryout sale which is currently codified in Ind. Code §7.1-3-5-3. Despite the stated purpose in the Bulletin (which was later incorporated into the statute) of allowing cold beer sales only in "metropolitan" areas, many package liquor stores throughout Indiana operate in isolated rural areas that are not

18

regularly policed in the same way as a metropolitan neighborhood. As just three examples, package liquor stores in rural areas in Nineveh (Johnson County), Leesburg (Kosciusko County) and in Medaryville on U.S. Route 421 (Pulaski County) sell cold beer despite their rural location. Photographs of these stores are included below:







[App125-126,131,132]

The Defendant's only proffered "rational basis" is that somehow the statutory discrimination might deter minors from drinking cold beer. [App95] It is an undisputed fact, however, that beer can be cooled in one minute. [App224,250] Meanwhile, beer is pervasive in Indiana and minors are regularly exposed to it (warm or cold). In Indiana, a package store can advertise and sponsor high school sporting events, junior high sporting events, and even little league baseball. [App96] Alcohol is advertised and present at Colts games, pro baseball games such as the Indianapolis Indians, festivals, and concerts. [App96-98,177] Establishments that market to children sell beer on premises, such as Chuck E Cheese restaurants. [App113-114]

### b. Cooled Beer Permits Are Authorized For Convenience Stores In Unpoliced, Unincorporated Towns, But Not In Policed, Incorporated Municipalities

Since the 1935 Act through today, Indiana statutes have allowed for permits for grocery stores, drug stores, and confectioneries to sell cold carry out beer in *unincorporated*, unpoliced towns. Ind. Code §§7.1-3-4-3, -4. As the State's 30(b)(6) witness admitted:

Q    So as major in the state excise police force, who is eligible for a beer retailer's permit in unincorporated towns?
A    For a beer retailer's permit?

Q    Correct.
A    To an applicant who is a proprietor of a drugstore, grocery store, confectionery, or store of good repute.

Q    And a beer retailer's permit allows for the sale of cold carryout beer; correct?
A    That is correct.

Q    You would agree that under the Indiana statute that is still on the books today, that only a grocery store, confectionery, drugstore or store in good repute can obtain a beer retailer's permit in an unincorporated town?
A    Based upon that statute, yes, sir.

Q    And that's the law of the state right now?
A    Yes, sir.

Q    Now, based on this statute that is on the books and is law today, a grocery store includes a convenience store by the definition of grocery store; correct?
A    Yes, sir.

[App85-86]   Although the record does not indicate that any are presently so operating, on its face the statutory scheme treats grocery stores, convenience stores, and pharmacies differently based on incorporated municipal status.   No rational basis was offered by the Defense for this differential statutory treatment.[6]

> ### c.    Convenience Stores Can Sell Cooled Wine And Wine Coolers With Higher Alcohol Content Than Beer, But Cannot Cool Beer At Or Before Sale

Meanwhile, grocery stores, convenience stores, and pharmacies in policed, incorporated municipalities are treated unequally through Ind. Code §7.1-5-10-11,

---

[6] The District Court interpreted this statute such that cooled beer could not be sold by convenience stores in unincorporated towns, contrary to the language of the statute, as discussed in the Argument section below.

21

which states, "[i]t is unlawful for the holder of a beer dealer's permit to offer or display for sale, or sell, barter, exchange or give away a bottle, can, container, or package of beer that was iced or cooled by the permittee before or at the time of the sale, exchange, or gift." The Rule 30(b)(6) representative for the Defense is unaware of any legislative history for the prohibition on the sale of cold beer. [App93] None has been produced by Defendant. Nor can the defense 30(b)(6) representative think of any reasonable basis for this disparate treatment. [App88]

Instead, the favorable treatment for package liquor stores is the result of special-interest lobbying aimed at benefitting package stores. [App151-152] Indeed, 21st Amendment, Inc., a group of Indianapolis-area liquor stores that sought intervention in this action and supplied an amicus brief below, affirmed in its brief and sworn declaration that this discriminatory treatment gives package liquor stores a competitive edge, declaring:

> Similarly, 21st Amendment is a direct beneficiary of Indiana Code §7.1-3-5-3, which permits package liquor stores to sell chilled beer for consumption off the premises, and Indiana Code §7.1-5-10-11, which prohibits other holders of beer dealer's permits from selling chilled beer. The current regulatory structure that permits package liquor stores, such as 21st Amendment, to sell chilled beer *provides 21st Amendment with a competitive advantage* over competitors such as grocery stores and convenience stores.

[ECF 23, ¶22; ECF 23-2, pp. 2-4 (Br. and Aff.) (emphasis added)]

Meanwhile, city convenience stores with police presence cannot sell beer cooled at or before sale, but these stores are allowed to sell higher-alcohol wine and wine coolers, warm or cold. [App72,220-221] Indeed, Ricker's, Thorntons, Freedom

Oil, and other grocery stores, convenience stores, and pharmacies can sell this wine product below, and cooled, with 13.5% alcohol content:



[App133,221]

### d.    Excise Officers Do Not Even Agree On When A "Sale" Occurs

The defense witnesses – Major Poindexter and Corporal Thickstun – do not even agree on when a "sale" occurs under the statute – a key point as the statute

prohibits the permittee from cooling the beer "at or before sale."  Major Poindexter

testified:

> Q    By the way, when would the sale have occurred?
> A    At the time money was exchanged between you and the retailer.
>
> Q    Right at the checkout?
> A    Right.
>
> Q    I've got the product. It's mine?
> A    Right.
>
> Q    The sale is done?
> A    Yes, sir.

[App223-224]  On the other hand, Corporal Thickstun testified:

> Q    The time of sale is part of this statute, correct?  "Offer, display for sale or sell," correct?  Is that part –
> A    Yes.
>
> Q    – of the statute?
> A    Yes.
>
> Q    And after there's been a sale, can the permittee cool the product?
> A    I think it depends on a number of things.  Where is it happening?  Is it concurrent with the sale or sometime down the road?  That would matter to me.
>
> Q    You've received no guidance or training on when the sale occurs under this statute, have you?
> A    No, I've not.
>
> Q    There's no guidelines, regulations, policies within the agency on that subject, are there?
> A    That's correct, there's not.
>
> Q    And you believe that sale occurs when the consumer leaves the store?
> A    Once they're off the licensed premise, yes.
>
> Q    Are you aware that –
> A    The sale is – the transaction is done; it's over with, yes.

[App243]

24

Furthermore, the arcane law is so inartfully drafted that it has exceptions that refute the proffered purpose. The statute prohibits the permittee from selling beer that has been "cooled by the permittee" at or before sale. As the State's 30(b)(6) witness admitted, this does not prohibit:

- cooling by the permittee immediately after sale [App102];
- cooling by the buyer at any time before, during, or after the sale [App101-102];
- turning a store's air conditioning down to cool the ambient air (and thus the product) [App99].

### e.   Extraordinary Penalties Exist For Violations

Within Title 7.1 of the Indiana Code – containing Indiana's alcohol statutes – Article 5 is located and is entitled "**Crimes And Infractions**." Within is Chapter 10, entitled "**Unlawful Sales**," and therein the "cooled beer" prohibition challenged by Plaintiffs here, Ind. Code §7.1-5-10-11, which reads, "It is unlawful for the holder of a beer dealer's permit to offer or display for sale, or sell, barter, exchange or give away a bottle, can, container, or package of beer that was iced or cooled by the permittee before or at the time of the sale, exchange, or gift." For violations of this standardless prohibition, the potential penalty is $1,000.00 per charge [App100], and license revocation. [App222] The charge can be levied on a container-by-container basis. [*Id.*]

### 5.   The District Court's Findings & Conclusions

The District Court issued a single order – its Findings & Conclusions – that denied the preliminary injunction motion and granted Defendant's motion for summary judgment. The District Court's order – by its title and language – appears to have conflated the two distinct procedural motions it had before it: (1) a motion

25

for preliminary injunction that included live testimony over a two-day evidentiary hearing that involved credibility determinations, weighing of evidence, and discretion; and (2) a separate defense motion for summary judgment that required all evidence to be taken favorably for the non-movant Plaintiffs.  The denial of preliminary injunction is not challenged on appeal, only the grant of summary judgment is appealed.

## SUMMARY OF ARGUMENT

The District Court's grant of summary judgment for the Defendant was contrary to law in three separate respects.

First, the District Court conflated the preliminary injunction motion – which involves credibility determinations, weighing of evidence, discretion, and factual finding – with the summary judgment process, which does not.  The District Court failed to consider the facts and reasonable inferences favorably for the non-movant Plaintiffs, weighed the evidence, and made assumptions and findings not supported by the evidence taken favorably for the Plaintiffs.  This procedural error infected the District Court's grant of summary judgment for Defendant on the equal protection claim.

Second, in addressing a statutory interpretation question of first impression, the District Court erred in adopting Defendant's proffered construction.  Under the plain language of Indiana alcohol statutes, a convenience store in an unincorporated Indiana town – with no police presence – can be issued a permit to sell cold carry-out beer, but in incorporated, policed towns, such retailers are prohibited from selling beer that has been cooled by the retailer at or prior to sale.  This legal error

further infected the District Court's grant of summary judgment for Defendant on the equal protection claim.

Third, the District Court erred in finding a rational basis for the discriminatory, anti-competitive beer statute that protects the less-compliant segment of the industry, forces convenience stores to display their beer in less secure, more accessible areas of their stores rather than in refrigerators with doors, allows them nonetheless to sell cold wine and wine coolers with higher alcohol contents, and ignores that beer can be cooled in one minute.

The District Court's grant of summary judgment to the Defendant on the equal protection claim is replete with legal error, and should be reversed. That claim should be remanded to the District Court for trial.

## ARGUMENT

As demonstrated below, the District Court erred in granting summary judgment for Defendant on the equal protection claim in three related respects: (1) by failing to take the evidence favorably for the non-movant Plaintiffs at summary judgment; (2) by misinterpreting law; and (3) by ruling that a rational basis exists for the State's discriminatory treatment

## STANDARD OF REVIEW

The appellate standard of review is as follows. First, the grant of summary judgment is reviewed *de novo. Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008) (reversing summary judgment); *Prestwick Capital Mgmt. v. Peregrine Financial Group, Inc.,* 727 F.3d 646, 655 (7th Cir. 2013); "All facts and reasonable

inferences must be construed in favor of the nonmoving party . . . ." *Chelios*, 520 F.3d at 685.

Second, the District Court's interpretation of statutes is reviewed *de novo*. *Prestwick Capital Mgmt.,* 727 F.3d at 655.

Third, the standard of review for an equal protection claim not involving a suspect class or a fundamental right is deferential rational basis. *Sweeney v. Pence*, __ F.3d __, 2014 WL 4290404, *9 (7th Cir. Sept. 2, 2014).

## A.    The District Court Erred In Failing To Take The Evidence Favorably For The Non-Movant Plaintiffs

On Defendant's motion for summary judgment, the District Court was required to take all facts and inferences in favor of the nonmoving party." *Chelios*, 520 F.3d at 685.  Evidence was not to be weighed; credibility determinations are left for final trial on the merits.

From the mere label of the Findings & Conclusions, however, it is apparent that District Court conflated the preliminary injunction proceeding and standards (involving weighing evidence, finding facts) with the Defendant's summary judgment motion and applicable standards.

Further, several examples reflect the seriousness and pervasiveness of the District Court's error.  For instance, the District Court wrote, "A change in the law would result in more cold beer sold in the state." [Sh. App. 12]  The District Court cited to *some* testimony from a Thornton's witness in making this finding, but not *all* the relevant evidence from that witness, which was specifically submitted and

advocated by Plaintiffs in opposing summary judgment. That witness – with multistate experience in convenience store ownership and operation – testified:

Q   If Thornton's is successful and is allowed to sell cold beer, will Thornton's do so in the State of Indiana?
A   Yes.

Q   And if allowed to sell cold beer, will Thornton's sell more beer than it is currently selling –
A   We will.

Q   – in your opinion?
A   In my opinion.

Q   And that's based – you think the numbers you have in other states will translate to Indiana?
A   We do.

Q   That's the basis for that opinion? Yes?
A   Yes.

Q   But it's your intent to be able to sell more beer?
A   It is, but I'd be – I'd want to clarify that and say I don't think people are going to drink more beer in the state of Indiana. I think it's a – it's like squeezing the balloon. There's a finite amount of beer consumption. Just because there's more available, more outlets available doesn't mean more consumption. I envision that we would take share from other retailers that currently can sell beer.

[App237-238]

This evidence – directly contrary to the "finding" of the District Court – was of record, and *specifically advocated* by Plaintiffs in opposing summary judgment. [ECF 148, p. 47] Indeed, Plaintiffs wrote, "Thus, rather than harm to the Defense, benefits will inure including the more compliant segment of the industry likely gaining market share without any evidence of an increase in overall beer sales [App237-238] . . . ." [ECF 148, p. 47]

29

Second, the District Court similarly found, "With so few trained excise police, the State will be challenged in terms of the enforcement of the alcohol laws." [Sh. App. 13]   This "finding" lacks any record evidence citation, and ignores other compelling evidence from which the ultimate trier of fact could (and Plaintiffs will submit should) find differently.   Indeed, the District Court then referenced that minors can lawfully enter convenience stores or grocery stores.   This is true, but actually supports Plaintiffs' case.

At a minimum, that minors may enter convenience stores yet *still* maintain a significantly superior record of compliance than liquor stores creates an inference that the discriminatory treatment in favor of liquor stores is irrational. Convenience stores and grocery stores – with minors on the premises – fare far better than liquor stores in complying with Indiana's alcohol laws.   This is an undisputed fact.  As the Defendant's designated 30(b)(6) witness admitted:

> Q    And who has complied better based on your agency's SAC project in compliance with alcohol laws:   grocery stores or package stores?
> A    By the straight-up numbers, the grocery stores [which include convenience stores] have complied better.
>
> Q    Consistently; correct?
> A    Consistently they have, yes.

[App116]

And those grocery stores, convenience stores, and pharmacies have already been deemed worthy of selling alcohol – including beer.  They have been deemed worthy of selling higher alcohol beverages, including *cold* wine and wine coolers.

And they are governed by Indiana laws restricting who can sell alcohol, and to whom it can be sold.

Furthermore, one of the District Court's findings actually confirms how compliant the convenience stores, groceries, and pharmacies are in complying with Indiana alcohol laws. Specifically, in Finding No. 17, the Findings & Conclusions state, "There have been very few citations issued for violating this [cooled beer] provision since the excise police began reporting in 2007." [Sh. App. 4] This supports the Plaintiffs' position that if allowed – like their competitors – to sell cold beer, they will continue to comply with Indiana law.

Upon striking the "cooled" prohibition of Indiana's discriminatory statute, taking the evidence favorably for the Plaintiffs, two things will happen. First, such retailers will move their beer off of accessible floors and shelves and into refrigerated coolers with doors, thus less accessible to minors. Second, this segment of the industry that has been compliant will remain compliant. To "find" otherwise – particularly at summary judgment – is wholly unsupported by the record evidence.[7]

Third, the District Court completely overlooked (and made *no* mention whatsoever of) a key undisputed fact in this case. Beer can be cooled in as little as one minute. [App224,250] This makes it "immediately consumable," to use the District Court's vernacular [Sh. App. 30] for those who prefer it cold (of course

---

[7] Furthermore, the District Court's "burden on the State" theory – beyond being unsupported by the evidence and certainly not when taken favorably for the non-movant – misses the point. Inconvenience to government is not a bar to enforcing the Constitution.

uncooled beer is also immediately consumable).  Overlooking this key undisputed fact impacts the District Court's rational basis analysis.

Fourth, and as another compelling example that on its face reveals the confusion between preliminary injunction-type findings and summary judgment analysis, the District Court – without record citation – writes, "Were the law otherwise and grocery/convenience/drug stores were permitted to sell cold beer, the evidence *suggests* that many more outlets for sale of beer will be constructed, and Indiana's alcoholic beverage will be tougher to enforce." [Sh. App. 31 (emphasis added)]

The only evidence that more outlets will be constructed comes from Thornton's, a sophisticated multi-state enterprise that has 30 stores in Indiana, and which has never been cited in Indiana for selling to minors. [App60]  Again, Thornton's and its kind are compliant retailers of beer and wine, more compliant than liquor stores that are given a near monopoly on the sale of cold beer.  So, yes, a trier of fact could find that more stores would be built by Thornton's, but there is no reasonable basis to conclude that this would make enforcement of Indiana's alcohol laws tougher.  To the contrary, and as demonstrated by the liquor store's amicus brief below, the less-compliant liquor stores fear this competition, would lose market share, and some – perhaps of the ilk of South Bend's "Drink Like A Champion" store – would go out of business.  *That* would make enforcement easier.

Fifth, in Finding No. 28 the District Court notes some differences in liquor stores and Plaintiffs' stores, but infers that Plaintiffs are completely different.  It is

undisputed, however, liquor stores and convenience stores sell many of the same products, that they are equally prohibited from selling beer to minors, and that they each have age limitations on who can sell alcohol. [Sh. App. 8]

Sixth, in Finding No. 33, the Findings credit Thickstun's testimony that Indiana Excise Police seize more cold beer than anything else, but that supports an inference that minors are getting it from liquor stores. There is zero evidence of any cold beer being obtained by a minor at a convenience store, grocery store, or pharmacy. [Sh. App. 10]

Finally, the Findings are notable for a number of undisputed facts supporting Plaintiffs that are absent in the Findings. For instance, there is no mention of

- Police presence in convenience stores;

- Parents, coaches, teachers, etc. being present in convenience stores;

- The contrast between dirty/dark liquor stores against the clean, well-lit convenience stores; and

- That convenience stores, groceries, and pharmacies – while prohibited from selling beer that has been cooled – are permitted to sell cold, higher-alcohol wine and fruity wine coolers.

In short, the District Court did not follow the requisite standards for addressing Defendant's summary judgment motion. This infects the decision and requires reversal.

**B.    The District Court Erred In Its Interpretation Of The Indiana Statute Allowing Cooled Beer Sales In Unincorporated Towns**

As noted, the Indiana statutory scheme discriminates further against convenience stores in policed, incorporated towns by allowing the same retailers in unincorporated, unpoliced towns to sell carry-out beer that has been cooled. Ind. Code §§7.1-3-4-3, -4. The District Court, however, in a question of first impression, erroneously accepted the Defendant's misinterpretation of the statute.

This construction contravenes the Defendant's own 30(b)(6) witness, who admitted:

> Q     So as major in the state excise police force, who is eligible for a beer retailer's permit in unincorporated towns?
> A     For a beer retailer's permit?
>
> Q     Correct.
> A     To an applicant who is a proprietor of a drugstore, grocery store, confectionery, or store of good repute.
>
> Q     And a beer retailer's permit allows for the sale of cold carryout beer; correct?
> A     That is correct.
>
> Q     You would agree that under the Indiana statute that is still on the books today, that only a grocery store, confectionery, drugstore or store in good repute can obtain a beer retailer's permit in an unincorporated town?
> A     Based upon that statute, yes, sir.
>
> Q     And that's the law of the state right now?
> A     Yes, sir.
>
> Q     Now, based on this statute that is on the books and is law today, a grocery store includes a convenience store by the definition of grocery store; correct?
> A     Yes, sir.

[App85-86]

Notwithstanding these admissions and the plain language of the unincorporated towns statute (on the books since 1935), the Defense asserts that a grocery store is not really a grocery store, and a drug store not really a drug store. This is contrary to the plain language of the statute, however, and conflicts with all rules of statutory construction if there were any ambiguity (which there is not), and is unsupported by any precedent. The unincorporated town provision for cold beer in Indiana's alcohol statutes expressly states:

*Premises Outside Corporate Limits.*

(a)  The commission may issue a beer retailer's permit for premises situated outside the corporate limits of an incorporated city or town if the premises are within, or in immediate proximity to, an unincorporated town:

(1)  which has been a settlement or a group of residences for more than ten (10) years;

(2)  to which the inhabitants of the surrounding countryside resort for purchases or public meetings or as a community or neighborhood center; and

(3)  which has borne a name and has been known by that name for more than ten (10) years.

(b)  The county surveyor of the county in which the premises is located shall certify the information set forth in subsection (a) to the commission.

*Premises Outside Corporate Limits: Persons Eligible.*

The commission may issue a beer retailer's permit as authorized by IC 1971, 7.1-3-4-3, only *to an applicant who is the proprietor of a drug store, grocery store*, confectionery, or of a store in good repute which, in the judgment of the commission, deals in other merchandise that is not incompatible with the sale of beer.

Ind. Code §§7.1-3-4-3, -4 (emphasis added).

The language is clear.  In unincorporated towns, grocery stores and drug stores may be issued permits to sell cold carryout beer, as Major Poindexter confirmed.  Grocery stores and drug stores are defined by Title 7.1, and mean what one would expect them to mean.  *See* Ind. Code §7.1-1-3-18.5 (grocery store defined), Ind. Code §7.1-1-3-15 (drug store defined).  They are not hotels, restaurants, or clubs.  Yet, Defendant asserts – and the District Court erred in concluding – that despite this clear statutory provision and Defendant's own designee's sworn testimony, a grocery store or drug store cannot get the permit "unless it is a restaurant, hotel, or club."

Defendant and the District Court cite to Ind. Code §7.1-3-4-2(13), which provides, "The commission shall not issue a beer retailer's permit, *except as otherwise authorized in this title* and subject to the other restrictions contained in this title, to the following persons:  * * *  (13) A person who is not the proprietor of a restaurant located and being operated on the premises described in the application for the beer retailer's permit, or of a hotel, or of a club, owning, or leasing the premises as a part of it." (emphasis added).  The provision by itself defeats the defense argument and District Court interpretation as the unincorporated town provision for grocery stores and drug stores, Ind. Code §§7.1-3-4-3, -4, follows immediately after the defense's red herring, Ind. Code §7.1-3-4-2(13).  The former could have no meaning if the latter trumped it.

Moreover, the Indiana alcohol statutes also define hotels, restaurants, and clubs.  *See* Ind. Code §§7.1-1-3-10, -19, -40; Ind. Code §7.1-3-20-1, -9, -18.  Not

surprisingly, *none* of these entities are grocery stores or drug stores.  Further, the provision the District Court and Defendant rely upon does not address the specific topics of unincorporated towns or grocery stores or drug stores in unincorporated towns.  The provisions of Ind. Code §§7.1-3-4-3, -4 *do* address those specific topics.

The District Court granted summary judgment for Defendant based on this erroneous, first-impression interpretation of the statute.  Reversal is required accordingly.

**C.    The District Court Erred In Finding A Rational Basis For The Discrimination**

**1.    The Prohibition On Convenience Stores In Incorporated, Policed Municipalities Cooling Beer At Or Before Sale Violates The Equal Protection Clause**

**a.    Applicable Standards**

The Fourteenth Amendment to the United States Constitution guarantees "equal protection of the laws." U.S. Const., Art. IV, §1.  "All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, under 'like circumstances and conditions,' people must be treated alike, unless there is a rational reason for treating them differently." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010)."  Equal protection is afforded persons and corporations, like Plaintiffs Ricker's, Thorntons, Freedom Oil, and IPCA. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1048 (9th Cir. 2002); *Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9, 16 (1st Cir. 1979).

"Under traditional due process and equal protection analysis, state action must be sustained as long as it bears a rational relation to a legitimate governmental interest." *Buquer v. City of Indianapolis*, 797 F. Supp.2d 905, 924

(S.D. Ind. 2011) (finding equal protection violation). Statutes that "do not encroach on a fundamental right are reviewed with 'considerable deference.'" *Sweeney*, __ F.3d __, 2014 WL 4290404, *12, *quoting United States v. Moore*, 644 F.3d 553, 555 (7th Cir. 2011). While "rational basis review 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices,'" it is also not a free pass for arbitrary government action. *Turner v. Glickman*, 207 F.3d 419, 424 (7th Cir. 2000) (quoting *FCC v. Beach Comm., Inc.*, 508 U.S. 307, 313 (1993)). Judicial review is required as part of checks and balances, and the Article III courts are not a rubber-stamp for discriminatory statutes. *See Baskin v. Bogan*, __ F.3d __, 2014 WL 4359059 (7th Cir. Sept. 4, 2014) (striking down bans on same sex marriage for lack of a rational basis); *see also City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985) (finding no rational basis for treating group home for mentally retarded individuals different than other facilities). As the Supreme Court has written, "True, even the standard of rationality as we so often have defined it must find some footing in the realities of the subject addressed by the legislation." *Heller v. Doe*, 509 U.S. 312, 321 (1993).

### b. The Defense's Proffered "Rational" Basis For The Discriminatory Cooled Beer Prohibition Fails

The statutory cooled beer prohibition applies only to grocery stores, convenience stores, and pharmacies in incorporated, policed municipalities, while the same enterprises in unincorporated, unpoliced towns have no such prohibition. Ind. Code §§7.1-3-4-3, -4. Meanwhile, these enterprises in policed, incorporated municipalities can sell beer – just not beer cooled by the store at or before sale – and

can sell higher-alcohol-content wine and wine coolers, warm or cooled. There is no legislative history providing any rational basis for the disparate, unequal treatment. [App93-94] No rational basis is even suggested by the Defendant for this disparate treatment.

This disparate treatment defies common sense because beer has the same alcohol content warm or cooled; beer that is sold cold in unincorporated towns has the same alcohol content as beer sold warm in policed cites; beer has a lower alcohol content than the warm or cooled wine and wine coolers that these stores can sell. Indeed, Ricker's, Thorntons, Freedom Oil, and other grocery stores, convenience stores, and pharmacies can sell cooled wine with 14% alcohol content. "Common sense has a place in adjudication." *Mitchell v. JCG Indus., Inc.*, 745 F.3d. 837, 842 (7th Cir. 2014).

Furthermore, the challenged law is so inartfully drafted that it has exceptions that refute the Defendant's proffered purpose. The statute prohibits the permittee from selling beer that has been "cooled by the permittee" at or before sale. Yet, as the State's 30(b)(6) witness admitted, this does not prohibit:

- cooling by the permittee immediately after sale [App102];

- cooling by the buyer at any time before, during, or after the sale [App101-102];

- turning a store's air conditioning down to cool the ambient air (and thus the product) [App99].

Indeed, it is undisputed that beer can be cooled in one minute. [App224,250] So the supposed rational basis for discriminating against convenience stores and giving liquor stores a protected economic advantage is to keep minors from going to

compliant convenience stores and illegally buying cold wine and wine coolers which are available for sale to adults, illegally buying room temperature beer (that can be cold, by the way, if the store is cold where it is shelved, or if the beer was delivered cold, such as in the winter), and which – undisputedly – can be cooled in one minute.

The only proffered "rational basis" is that somehow this discrimination might deter minors from getting "cold" beer. [App95]  However, Indiana allows minors to be exposed to beer – including cold beer – in virtually every setting:  festivals, amusement parks, sporting events, Chuck E Cheese kids restaurants, and at countless events at the State Fairgrounds. [App115]  Meanwhile, alcohol can be advertised at Indiana high school, junior high, even grade school events [App96-98], is ubiquitous on television, and a Google search of "cold beer" returns 143 million hits in .26 seconds.

Moreover, it is undisputed that the Indiana liquor store industry's compliance with Indiana alcohol laws is below that of grocery stores, convenience stores, and pharmacies.  As the State's designated 30(b)(6) witness admitted:

> Q    And who has complied better based on your agency's SAC project in compliance with alcohol laws:  grocery stores or package stores?
> A    By the straight-up numbers, the grocery stores [which include convenience stores] have complied better.
>
> Q    Consistently; correct?
> A    Consistently they have, yes.

[App116,226]

Furthermore, beyond the SAC Survey, overall citation statistics confirm that grocery stores, convenience stores, and pharmacies are far more compliant than package liquor stores, restaurants, and taverns. [App252-253; ECF 97-39, Ex. 117] And this is true even though there are more alcohol permits state-wide for grocery stores, convenience stores, and pharmacies than liquor stores. [App254]

Unlike some liquor stores, the record evidence demonstrates that convenience stores in Indiana are clean, well-lighted establishments not dependent upon alcohol sales for their existence. [App90-92]   Convenience stores are frequented by many customers, including police officers, providing a deterrent to minors seeking alcohol. Ricker's and Thorntons offer free coffee to officers, resulting in numerous visits annually by police. [App142,144,186-187,193-194]

Ironically, the proffered rational basis for prohibiting "cooled beer" in these stores that are allowed to sell uncooled beer forces these retailers to put the product out in the open on the floor or shelves – more visible and accessible to minors – than if it were in a cooler.  Thus, the arcane statute does not have a rational basis, and actually works against any professed goal of limiting minor access to alcohol.  It makes the product more visible, and drives minors to the less-compliant retailers.

The discriminatory Indiana statute gives unequal treatment to retailers of beer, but beer is beer is beer, regardless of temperature.  It has the same alcohol content regardless of being "cooled," is consumable at any temperature, and is easily and quickly cooled by a buyer in a few minutes in ice.  To support its sole proffered "rational basis" of "limiting cold beer for minors," the defense proclaims that it

seizes more cold beer from minors, although there is contrary evidence that minors prefer hard liquor.  It is undisputed, however, that no cold beer is coming from grocery stores, convenience stores, or drug stores.  It is being acquired from the less-compliant establishments because at present grocery stores, convenience stores, and drug stores are prohibited from and do not sell cooled beer. [App232-233]  And, minors are cooling beer themselves in refrigerators and coolers. [App236]

If the statutory prohibition applying only to policed, incorporated municipalities ever had a legitimate basis – and there is no evidence that it did – the circumstances have certainly changed in the last 75 years, with the world a different place now than it was after the repeal of Prohibition. [App218-219]  As this Court recently observed, "Moore contends that data amassed by the Sentencing Commission and others over the past twenty years demonstrates that Congress relied on flawed evidence in concluding that crack is more dangerous than powder cocaine, and in arriving at the 100–to–1 differential.  It is true that where 'a statute [is] predicated upon the existence of a particular state of facts' (as the instant statute is based on the belief that crack is more dangerous than powder cocaine), its constitutionality 'may be challenged by showing to the court that those facts have ceased to exist.'" *Moore*, 644 F.3d at 556 (quoting *United States v. Carolene Products Co.*, 304 U.S. 144, 153-154 (1938)).

This discriminatory treatment is causing the Plaintiff convenience stores daily loss of revenue, is keeping millions of dollars from being invested in Indiana for construction of modern convenience stores, costs consumers more in premiums

charged by monopolistic liquor stores for cold beer, drives border Hoosiers like Steve Noe to buy cold beer out-of-state (thus depriving Indiana of tax revenues), and puts the majority of cold beer sales with a liquor store industry that is less compliant with Indiana alcohol laws.  This is anything but rational.  The Court's grant of Defendant's summary judgment motion on equal protection should be reversed.

## CONCLUSION

The District Court's grant of summary judgment for Defendant on the equal protection claim should be reversed, and the equal protection claim should be remanded for trial to a different District Judge in the spirit of Circuit Rule 36.

Respectfully submitted,

*/s/ John R. Maley*

John R. Maley
Mark J. Crandley
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
317.231.7464

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this Brief of Appellants complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  Based on the word count program contained in Microsoft Word 2010, with the exception of portions of the Brief of Appellants properly excluded under Rule 32(a)(7)(B)(iii), the Brief of Appellants contains fewer than 14,000 words, and specifically contains 9,005 words.

/s/ *John R.  Maley*
John R. Maley

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of September, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM-ECF system.  I certify that all participants in the case are registered CM-ECF users and that service will be accomplished by the CM-ECF system with a courtesy copy sent via electronic mail to the following:

Kenneth L. Joel
Indiana Attorney General
302 West Washington Street
Indiana Government Center South, Fifth Floor
Indianapolis, IN  46204
Kenneth.joel@atg.in.gov


/s/ *John R.  Maley*
John R. Maley

## CIRCUIT RULE 30(d) STATEMENT

In compliance with Circuit Rule 30(d), I certify that the Short Appendix included and bound with this Brief of Appellants includes all the materials required to be so included by Circuit Rule 30(a), and that Appellants' Appendix also being filed herewith includes all the materials required to be so included by Circuit Rule 30(b).

/s/ *John R. Maley*
John R. Maley

## ATTACHED REQUIRED SHORT APPENDIX

### Table of Contents

Page

Findings of Fact, Conclusions of Law, and Order (June 16, 2014) (ECF 162) ....... 1

Order (June 20, 2014) (ECF 163) ........................................................................... 35

Final Judgment (June 20, 2014) (ECF 164) ........................................................... 37

INDS02 1338382v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANA PETROLEUM MARKETERS | ) | |
| AND CONVENIENCE STORE | ) | |
| ASSOCIATION, | ) | |
| THORNTON'S INC., | ) | |
| RICKER OIL COMPANY, INC., | ) | |
| FREEDOM OIL, LLC, and | ) | |
| STEVE E. NOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 1:13-cv-00784-RLY-DML |
| vs. | ) | |
| | ) | |
| ALEX  HUSKEY, in his official capacity | ) | |
| as Chairman of the Indiana Alcohol and | ) | |
| Tobacco Commission, | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

Plaintiff, the Indiana Petroleum Marketers and Convenience Store Association

("IPCA"); three of its members, Thorton's Inc., Ricker Oil Company, Inc. and Freedom

Oil, LLC.; and an individual consumer, Steve E. Noe, challenge the constitutionality of

the Indiana Code § 7.1-5-10-11, which prohibits the sale of cold beer by the holder of a

beer dealer permit.  An evidentiary hearing on the Plaintiffs' Motion for Preliminary

Injunction was held on February 20-21, 2014.  The witnesses included: Robin Lynn

Poindexter, retired Major with the Indiana State Police; Matt Thornton, President and

CEO of Thorton's, Inc.; Gregory J. Cobb, managing member of Freedom Oil, LLC.;

Quinn B. Ricker, President and CEO of Ricker Oil Company, Inc.; Matthew Dublis, Vice

President of Operations at Thornton's; Karen Mitchener, Director of Human Resources at

Ricker Oil; Steve Noe, a consumer; Travis R. Thickstun, Corporal of the Indiana State

Excise Police; and Scot Imus, Executive Director of the IPCA.[1]  Plaintiffs request the

court to declare that Indiana's alcohol beverage law is unconstitutional under both the

United States and Indiana Constitutions, and to enjoin its enforcement.  Defendant, Alex

Huskey, in his official capacity as Chairman of the Indiana Alcohol and Tobacco

Commission ("ATC") or (the "State"), also moves for summary judgment.  The briefs in

support of both motions rely on the same facts and law; accordingly, the court will

address the motion for summary judgment first.

## I.  FINDINGS OF FACT

### A.      The Parties

1.  Plaintiff, IPCA, is an Indiana trade association, and its members are convenience

    stores that are located in Indiana. (Imus Test. at 420, 422).

2.  IPCA's function is to provide advice to, and advocate on behalf of, its Indiana

    convenience stores.  (*Id*. at 420, 424).

3.  IPCA's current members are 115 convenience store entities.  Those entities own

    and operate some 1,500 convenience stores in Indiana, and about 70% to 80% of

    those locations sell beer.  (*Id*. at 412-14).

---

[1] The testimony from the hearing will be cited as "[last name] Test. at [page number]." (*See* Filing No. 142, Filing No. 143). Testimony taken by deposition will be cited as "[last name] Dep. at [page number]"; testimony taken by declaration will be cited as "[last name] Decl. [paragraph number]"; and evidence submitted at the preliminary injunction hearing will be cited as "[Defendant's or Plaintiffs'] PI Ex. [designated by alphabet or number]."

4. Plaintiff, Thornton's Inc., a Delaware corporation, began in the convenience store Industry in the 1980s.   (Thorton Test. at 139-141, 151-52).   Thornton's currently owns and operates 175 convenience stores in six states, 26 of which are in Indiana. (Dabulis Test. at 250).   Of its 26 Indiana convenience store locations, Thornton's sells beer at 18 of them.   (*Id*. at 250-51).   Thornton's has been cited once for violating Indiana Code § 7.1-5-10-11.   (Plaintiff's PI Ex. C).

5. Plaintiff, Ricker Oil Company, Inc., is an Indiana corporation and 100% of its stock is owned by long-time Indiana residents.   (Ricker Dep. at 35).

6. Ricker began in the Indiana convenience store business in 1991/1992.   (Ricker Test. at 220).   Ricker currently owns 50 stores in Indiana, 46 of which sell beer. (Ricker Dep. at 211).

7. Ricker has never been cited for violating Indiana Code § 7.1-5-10-11.   (Ricker Test. at 225).

8. Freedom Oil, LLC, is an Indiana limited liability company and 100% of its units are owned by long-time Indiana residents.   (Cobb Test. at 192-93).

9. Freedom started in 2002, and currently owns 6 stores in Indiana, three of which sell beer.   (Cobb Test. at 184).

10. Freedom has never been cited for violating Indiana Code § 7.1-5-10-1.   (*Id*. at 195-96).

11. Plaintiff, Steve E. Noe, 49, is an individual who resides in Richmond, Indiana, near the Ohio border.   (Noe Test. at 270).

12. Noe occasionally buys beer, and prefers to buy cold beer.  To buy cold beer, he must either purchase it at an Indiana liquor store or drive to New Paris, Ohio. (*Id.* at 271-74).

13. Defendant, Alex Huskey, is the Chairman of the Alcohol and Tobacco Commission, and is sued in his official capacity.

**B.    Indiana Code § 7.1-5-10-11**

14. The statutory provision at issue, Indiana Code § 7.1-5-10-11,  provides:

   "Sale of Cold Beer Prohibited.  It is unlawful for the holder of a **beer dealer's permit** to offer or display for sale, or sell, barter, exchange or give away a bottle, can, container, or package of beer that was iced or cooled[2] by the permittee before or at the time of the sale, exchange or gift."

   Ind. Code § 7.1-5-10-11 (emphasis added).

15. This provision applies to grocery stores and drug stores.  (Thickstun Test. at 327; Poindexter Test. at 136).  The parties agree that the statutory definition of "grocery store" includes a "convenience store."  Ind. Code § 7.1-1-3-18.5.

16. Violation of this provision may result in a civil fine, or the suspension or revocation of the permittee's permit.  *See* Ind. Code § 7.1-3-23-2; (Poindexter Test. at 88-89, 101).

17. There have been very few citations issued for violating this provision since the excise police began mandatory reporting in 2007.  For example:

   In 2007, Thornton's placed various malt beverages in a cooler and was offering these for sale.  Thornton's store manager was contacted by phone and stated that they mistakenly believed that these products could be sold cold as they believed

---

[2] Plaintiffs do not challenge the "iced" provision of the statute; only the "cooled" provision.

them to be wine.  Notably, the items in the cooler were not Bud Light, Coors, Corona, or other beers.  Thornton's General Counsel assured the State that "this mistake will not happen again."  The judgment was deferred for a year.

In 2008 Mt. Etna Bait was selling cold beer and, in fact, the store representative confirmed that the business was selling cold beer.  The store unplugged the cooler that was cooling the beer and took down the signs that were advertising cold beer.

In 2009, Speedway had attached beer to their cooler areas as a way of making the beer cold.  During the citation process, the manager told the officer that "he thought that by attaching beers to their cooler doors that they would get cold." Speedway was fined $150.00.

In 2010, Geist Market was advertising cold beer and the officer asked for a cold 12-pack of Coors Light and the employee retrieved the cold 12-pack of Coors Light from a walk-in cooler area.  The officers searched the walk-in cooler area and discovered various brands of beer being stored there and all of the beer was very cold.  There was also a stand-alone glass front cooler in the back room that was full of beer and the beer was very cold.  There were 600 units of cold beer; however, the total fine was $250.00.

In 2010, Pappy's was cooling and selling malt beverages other than beer.  The store believed that these products were wine and, thus, could be cooled.  Beer was not being cooled.  The judgment was deferred.

In 2011, JK Deli was cooling and selling malt beverages other than beer.  The store believed that these products were wine and, thus, could be cooled.  Beer was not being cooled.  JK Deli was fined $150.00.

(Thickstun Decl. ¶ 4.  *See also* Thickstun Test. at 165, 358-62; Defendant's PI

Exs. C, E, G).

18. An entity that wishes to sell beer in the State of Indiana must apply for a permit.

The court's Findings of Fact address three permits at issue in this case: (1) the beer

dealer permit (for convenience stores, grocery stores, and drug stores); (2) the

dealer permit (for package liquor stores); and (3) the beer retailer permit (for

restaurants, taverns, and the like).

5

C. **Beer Dealer Permits/Beer Dealers**

19. The business model of a convenience store is premised on convenience, and this convenience is achieved in several ways: (a) being open 24 hours a day 365 days a year; (b) having no age restriction on customers; (c) providing a variety of goods including many basic necessities; and (d) having products available for customers to pick up and take to the cash register. (*See generally*, Thickstun Test. at 151, 153-56, 160; Dabulis Test. at 254; Imus Test. at 416, 434-35; Ricker Test. at 225-26, 228-30, 232-33).

20. Convenience stores like Thornton's, Ricker, Freedom Oil, Speedway, Circle K; grocery stores like Marsh, Kroger, Meijer; drug stores like CVS and Walgreens; big-box stores like Walmart, Target, K-Mart, may sell beer (and if they contain a pharmacy, hard liquor) if they acquire the proper beer dealer permit, noted below. (Thickstun Test. at 326-27).

21. The types of permits that a convenience store (classified as grocery stores for permitting purposes) may acquire include: (a) a permit to sell beer only at a grocery store located in an incorporated area; (b) a permit to sell beer only at a grocery store located in an unincorporated area; (c) a permit to sell beer and wine at a grocery store located in an incorporated area; or (d) a permit to sell beer and wine at a grocery store located in an unincorporated area. (Thickstun Decl. ¶ 5).

22. These permits are issued with the following conditions: (a) all beer and malt products must be sold and stored non-cooled, non-chilled, and non-iced; (b) no

alcohol may be sold on Sunday; (c) clerks must be 19 years of age to sell alcohol; and (d) on-premises consumption is forbidden.  (*Id.* ¶ 6).

23. Indiana imposes a 25% cap on the amount of revenue convenience stores (and grocery stores) may raise from the sale of alcohol.  (Imus Test. at 402; Poindexter Test. at 123-24; Ind. Code § 7.1-1-3-18.5 (b)).  However, Indiana imposes no restriction on the amount of floor space a convenience store can dedicate to the display or sale of beer.  (Ricker Dep. at 64-65; Cobb Dep. at 92; Imus Dep. at 63).

24. Currently, there are about 2,800 convenience/grocery/drug stores in Indiana that have beer dealer permits.  Approximately 4,600 more beer dealer permits are currently available.  (Thickstun Test. at 348).

**D.    Dealer Permits/Liquor Dealers**

25. Package liquor stores sell cold beer for take-away pursuant to a "dealer permit" that allows these stores to sell beer, wine, and liquor for locations in incorporated areas.  (Thickstun Decl. ¶ 10).

26. A package liquor store that sells take-away beer operates under the following conditions: (a) all alcohol may be served cooled, iced, or chilled or non-cooled, non-iced, or non-chilled; (b) state licensing is required for individuals to sell alcohol; (c) specialized server training is required for individuals to sell alcohol; (d) clerks must be 21 years of age to sell alcohol; (e) anyone under the age of 21 is not allowed to enter the premises; (f) alcohol may not be sold on Sunday; (g) on-premises consumption is not allowed; (h) a limited type of non-alcoholic

commodity may be sold; and (i) alcohol may not be sold outside the building. (*Id.*).

27. There is a maximum quota on the number of dealer permits issued by the State. (*Id.*).  Consequently, the cost associated with obtaining a package liquor store permit is far higher than a permit for a convenience store.  (Poindexter Test. at 103).  In this manner, the State limits the sale of cold beer.  (*Id.* at 101-04).

28. Package liquor stores differ from convenience stores in several ways.  For example, they are not legally allowed to sell many of the goods that convenience stores sell; they cannot be open on Sundays; persons under the age of 21 may not enter; and employees who sell beer must be 21 years of age or older, must be permitted by the ATC, and must have successfully completed server training. (Defendant's Stipulations of Fact ¶¶ 5, 10, 15-18, 23; Noe Dep. at 39-40; Imus Dep. at 58).

**E.    Beer Retailer Permits/Beer Retailers**

29. A beer retailer permit is the permit that allows a business, like a restaurant or tavern, to sell beer for on-premises consumption.  (Thickstun Test. at 331-32; Poindexter Test. at 111; Ind. Code § 7.1-3-4-1) (providing that the "commission may issue a beer retailer's permit to a person who desires to sell beer to customers for consumption on the licensed premises and who meets the qualifications provided by this title").

30. There are seven types of retailer permits: (a) a permit type to sell beer only for locations in incorporated areas; (2) permit type to sell beer only for locations in unincorporated areas; (3) a permit type to sell beer and wine for locations in incorporated areas; (d) a permit type to sell beer and wine for locations in unincorporated areas; (e) a permit type to sell beer, wine, and liquor for locations in unincorporated areas; (f) a permit type to sell beer, wine and liquor for locations in incorporated areas that allows for take-away; and (g) a permit type to sell beer, wine and liquor for locations in incorporated areas that does not allow for take-away.  (Thickstun Decl. ¶ 11).

31. All beer retailer permits operate with the following conditions: (a) all alcohol may be served cooled, iced, or chilled or non-cooled, non-iced, or non-chilled; (b) the facility must provide food for sale and have a minimum of 25 seats; (c) state licensing is required for individuals to sell alcohol; (d) specialized server training is required for individuals to sell alcohol; (e) if the premises contains a bar, it must be properly sectioned off from the family dining area; (f) anyone under the age of 21 is not allowed in the bar area; (g) waiters must be 19 years of age to sell alcohol in the family area of a restaurant and 21 years of age to work in the barroom or act as a bartender; (h) on-premises consumption is allowed; (i) restaurants which sell beer, wine, and liquor in unincorporated areas must meet an average food sales quota of $100,000 annually over the three years immediately preceding its application for a permit (a lower amount is required if the restaurant operates for six months or less per year).  The maximum quota of the number of these permits

9

is designated by the Indiana Code and the quota varies according to type of

license.  (*Id*. ¶ 12).

32. Persons under the age of 21 may not legally enter the area of a restaurant or tavern

where cold beer is sold for take-out.  (Poindexter Dep. at 171-72).  For restaurants

and taverns that sell cold beer for take-away, there is no self-service option (*i.e*.,

taking the alcohol from the shelf).  (Imus Dep. at 63).

## F.    Cold Beer and its Enforcement

33. American consumers prefer cold beer over non-chilled beer. (Imus Test. at 420).

Indeed, the Indiana Excise Police seize and destroy cold beer more often than any

other alcoholic beverage.  In addition, the majority of these cases involve minor

possession of cold beer.  (Poindexter Test. at 90, 119-20; Thickstun Test. at 353,

384 (Q: "In your experience as an excise officer, when you're making arrests,

seizures, things like that, and the product is beer, is the beer cold?"  A: "More

often than not, yes.").

34. The primary outlet for the sale/purchase of cold beer is the package liquor store.

(Imus Test. at 432; Noe Test. at 279-81).

35. In his 12-year career, Corporal Thickstun has made many more cases involving

violations of Indiana's alcohol laws in convenience/grocery stores than he has in

package liquor stores.  (Thickstun Test. at 353).  Further, comparing cases made at

convenience stores with cases made at package liquor stores, the product that is

**10**

most often purchased (or attempted to be purchased) at a convenience store is
beer.  (*Id*. at 353, 384).

36. Plaintiffs submitted a document based on data from the ATC's website, prepared
    by Mr. Imus.  (Plaintiffs' Ex. 117).  Since 2005, the total violations noted by the
    ATC involved restaurants and bars at 73%; liquor stores came in second at 13%;
    and grocery stores, convenience stores, and drug stores came in third at 6%.  (*Id*.).
    The remaining 9% were lumped under the category "other."  (*Id*.).  In the "Selling
    to Minors" category, restaurants and bars were cited 60% of the time; liquor stores
    came in second at 20%; and grocery stores, convenience stores, and drug stores
    came in third at 16%.  (*Id*.).

37. Plaintiffs also submitted testimony regarding Indiana's alcohol compliance
    program, also called the Survey for Alcohol Compliance.  (Poindexter Dep. at
    138-49).  The program involves the State excise police sending in minors to permit
    holders of all types to test whether the permittee will sell to the minor.  (*Id*. at
    138).  According to Corporal Thickstun, the youths who participate must be and
    look under 21, are forbidden to carry any identification, and are forbidden from
    lying about their date of birth.  (Thickstun Test. at 342).  The point of the program
    is to determine whether the permittee asks for identification.  (*Id*. at 343).  Major
    Poindexter testified that the results of the survey reflect that grocery stores
    perform better than package liquor stores and restaurants and taverns.  (Poindexter
    Test. at 61-62, 64).

**11**

## G.    Effect of Change in the Law

38. The convenience-store Plaintiffs would like to enter the "cold beer" market.  (*See, e.g.,* Imus Test. at 434; Cobb Test. at 201, 204; Ricker Test. at 226, 233-34; Thornton Test. at 157-58).  As it stands now, Indiana Code Section 7.1-5-10-11 precludes them from doing so.

39. Imus testified that, if the convenience-store Plaintiffs are allowed to offer, display, and sell beer that has been cooled by them, 70%-80% of the 1,500 stores that IPCA represents will immediately sell cold beer.  (Imus Test. at 417-18).  These businesses, as holders of beer dealer permits, would not be subject to the same restrictions as those placed on package liquor stores, restaurants, taverns, and the like.  (*Id*. at 417-19, 435-37, 439-40; Imus Dep. at 126-29).

40. A change in the law would result in more cold beer sold in the state.  (Imus Test. at 435-37, 440; Ricker Test. at 226, 236).  On this point Thornton testified that, if allowed to sell beer, his stores that currently sell beer will immediately sell cold beer, his stores will sell more beer than they currently do, his stores that do not currently sell beer will become permitted to do so, and he intends to add 10-15 more stores in Indianapolis and 8-10 more stores in Lake County.  (Thornton Test. at 167-68, 171-72).

41. Beyond this, if successful, many other stores that have beer dealer permits will be allowed to immediately sell cold beer, such as CVS, Walgreens, Walmart, K-Mart, Target, Marsh, Speedway, and Kroger.  (Thickstun Test. at 346).

42. There are 60 Indiana State Excise Police Officers performing law enforcement duties in the state who receive extensive training at the law enforcement academy and on-the-job training, including basic investigative techniques. (*Id.* at 349; Poindexter Test. at 81-82).

43. With so few trained excise police, the State will be challenged in terms of the enforcement of the alcohol laws. For example, since it is illegal for a minor to enter a package liquor store, if a young-looking person exits such a store with a package, an officer likely has reasonable suspicion to stop the person and inquire further. By contrast, since it is not illegal for a person under the age of 21 to enter a convenience or grocery store, if a young-looking person exits that establishment with a parcel, an officer likely does not have reasonable suspicion to stop the individual and inquire further. (Thickstun Test. at 350-51).

## II.  CONCLUSIONS OF LAW

1. To the extent any of the foregoing findings of fact is a conclusion of law, it is hereby adopted as a conclusion of law. To the extent any of the conclusions of law set forth below is a finding of fact, it is hereby adopted as a finding of fact.

2. The court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 2201, and 1367.

### A.     Standard of Review

3. The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

4. A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 248.

5. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence

14

**14**

in the record in the light most favorable to the non-moving party and resolve all

factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

**B.**   Plaintiffs' Claims

1.  In their Second Amended Complaint, Plaintiffs allege that Indiana Code § 7.1-5-10-

    11: (1) violates their rights to due process of law under the Fourteenth Amendment

    of the United States Constitution and Article 1, Section 21 of the Indiana

    Constitution (Count IV); (2) violates their right to equal protection under the

    Fourteenth Amendment of the United States Constitution (Count I);  (3) violates the

    equal privileges and immunities clause under Article IV, § 2 (Count III – Plaintiff

    Noe only); (4) violates the commerce clause under Article 1, § 8 of the United

    States Constitution (Count II); (5) violates the privileges and immunities clause

    under Article 1, Section 23 of the Indiana Constitution (Count V); and (6) violates

    the liberty clause under Article 1, § 1 of the Indiana Constitution (Count VI).

2.  In their proposed Findings of Fact and Conclusions of Law, Plaintiffs notified the

    court they were withdrawing their Commerce Clause claims alleged in Count II

    based on standing.  In addition, Plaintiffs did not respond to the State's argument

    that Noe's right to equal protection of the law alleged in Count III has not been

    violated, as he is treated the same as any other Indiana resident as it relates to the

    purchase of beer (warm or cold).  The State's motion for summary judgment on

    Counts II and III is therefore **GRANTED**.

3. Plaintiffs' federal constitutional claims are brought under 42 U.S.C. § 1983. That section provides a private cause of action against a person, who acting under color of state law, deprives an individual of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting 42 U.S.C. § 1983).

4. To prevail on a Section 1983 claim, a plaintiff must show that he or she suffered the violation of a federal constitutional right, which was clearly established, by one acting under color of state law. *Id*.

5. Before addressing the merits of Plaintiffs' claims, the court first addresses two threshold issues: (1) whether Noe has standing to challenge Indiana's alcoholic beverage laws, and (2) whether the State is entitled to Eleventh Amendment immunity from Plaintiffs' state law claims.

## C.     Standing/Plaintiff Noe

6. Article III, § 2, of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). One aspect of the case-or-controversy requirement is standing. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (citing *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville,* 508 U.S. 656, 663–664 (1993)); O'Sullivan v. City of Chicago, 396 F.3d 843, 853 (7th Cir. 2005).

7. Standing turns on whether the plaintiffs have a personal stake in the controversy and "whether the dispute touches upon the 'legal relations of the parties having adverse legal interests.'" *O'Sullivan*, 396 F.3d at 853 (quoting *Flast v. Cohen*, 392 U.S. 83, 101 (1968)).  To have standing, a plaintiff must demonstrate: (1) an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; that is, the injury has to be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).

8. Noe is named as a plaintiff in Counts I, IV and V of Plaintiffs' Second Amended Complaint. Counts I and V allege a violation of convenience stores' purported equal protection right to sell cold beer, and Count IV asserts a violation of convenience stores' due process rights because the word "cooled" is allegedly vague.  Noe, however, is an individual who has never owned or operated a convenience store in Indiana and has never sought any permit to sell alcohol – and has no intent of doing either in the future.

9. Noe, therefore, lacks standing to litigate Counts I, IV, and V.

**D.     Eleventh Amendment Immunity**

10. In *Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89 (1984), the Supreme Court held that the Eleventh Amendment barred official capacity suits against state officers in federal court for the violation of state law. *Id.* at 106. The Court reasoned, "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh amendment." *Id.*

11. However, a state's sovereign immunity is not absolute. This rule has two exceptions: a state may waive its sovereign immunity and consent to suit in federal court, "or Congress may use its enforcement powers under the fourteenth amendment to abrogate the states' eleventh amendment immunity." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir. 1993). "For either exception to apply, the intent to waive or abrogate immunity must be explicit and unequivocal." *Id.* (citing *Kroll v. Bd. of Trustees of Univ. of Illinois*, 934 F.2d 904, 907 (7th Cir. 1991), *cert. denied*, 502 U.S. 941 (1991)).

12. Plaintiffs contend the State waived its sovereign immunity through its participation in this case, and by its litigation conduct – *i.e.*, its failure to pursue the defense until the filing of its response to the present motion for preliminary injunction and the filing of its own motion for summary judgment, both of which were filed on February 7, 2014.

13. In support of their argument, Plaintiffs rely on *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002). In that case, the Supreme Court held that Georgia's voluntary removal

**18**

of a case instituted by a professor in the Georgia state university system constituted a waiver of its Eleventh Amendment immunity. *Id*. at 620.  In its holding, the Court relied on prior case law which held that a state's voluntary appearance in federal court amounted to a waiver of its sovereign immunity.  *Id*. at 619.  Thus, although Georgia was brought involuntarily into the case as a defendant in the original state-court proceedings, Georgia voluntarily agreed to remove the case to federal court, thereby invoking federal court jurisdiction.  *Id*. at 620.  The Court reasoned: "It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand."  *Id*. at 619.

14. Plaintiffs also rely on *Ku v. State of Tennessee*, 322 F.3d 431 (6th Cir. 2003), a case in which the Sixth Circuit, relying in part on *Lapides*, held that the State of Tennessee waived its sovereign immunity through its litigation conduct.  *Id*. at 435.  Although Tennessee was initially brought into the case involuntarily, Tennessee engaged in extensive discovery, moved for summary judgment on the merits, and failed to assert the defense of Eleventh Amendment immunity until the district court decided the case on the merits.  *Id*. at 435.  "[W]e hold that appearing without objection and defending on the merits in a case over which the district court otherwise has original jurisdiction is a form of voluntary invocation of the federal

19

**19**

court's jurisdiction that is sufficient to waive a State's defense of Eleventh Amendment immunity." *Id*.

15. Like the governmental entities in *Lapides* and *Ku*, the State (i.e., Huskey in his official capacity) was brought involuntarily into this case.  However, the State did not remove the case to federal court; the case was initiated here by the Plaintiffs.

16. In addition, unlike the governmental defendants in *Lapides* and *Ku*, the State has consistently raised its defense of Eleventh Amendment immunity throughout this litigation.  The State asserted the Eleventh Amendment as an affirmative defense in its Answer to Plaintiffs' Complaint, First Amended Complaint, and Second Amended Complaint. The State also opposed Plaintiffs' Motion for Leave to File a Second Amended Complaint and included in that opposition argument that the Eleventh Amendment and *Pennhurst* barred Plaintiffs' state-law claims.

17. That the State responded to discovery, participated in court conferences with the Magistrate Judge, responded to the present motion for preliminary injunction, and filed a motion for summary judgment on the merits is not the type of litigation conduct sufficient to waive the State's defense.  Plaintiffs' reliance on those facts fails to recognize that the State had a duty to litigate the federal constitutional claims asserted against it.  Further, in the State's motion for summary judgment, the first issue raised in the State's Argument Section addressed its entitlement to Eleventh Amendment immunity; the State's arguments on the merits of Plaintiffs' state law constitutional claims were made in the alternative.

20

18. The court therefore finds, under the particular circumstances of this case, the State did not waive its Eleventh Amendment immunity.  Plaintiffs' state constitutional claims asserted against the State are therefore barred.  *See Pennhurst*, 465 U.S. at 919 (holding that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment"). The State's motion for summary judgment on Plaintiffs' state law claims asserted in Counts V and VI is **GRANTED**.

**E.**   Plaintiffs' **Federal Constitutional Claims**

**1.  Due Process/Void for Vagueness**

19. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

20. The void-for-vagueness doctrine requires that a statute that prescribes a penalty be written "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citation omitted).

21. In 1941, the Indiana Supreme Court held that the "cooled beer" provision is written with sufficient definiteness that ordinary people can understand the type of conduct that is prohibited. *Doyle v. Clark*, 41 N.E.2d 949, 951 (Ind. 1941) ("We are of the opinion that the phrase 'iced or cooled by such permit holder before or at the time of

**21**

such sale' etc. is not indefinite and there need be no uncertainty as to what is prohibited.").

22. Even if *Doyle* were not dispositive on the issue of notice, Plaintiffs would face a tough hurdle.  To prevail on their facial challenge, Plaintiff "must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982).  "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Id.* at 495; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 21 (2010) ("[T]he dispositive point here is that the statutory terms are clear in their application to plaintiffs' proposed conduct, which means the plaintiffs' vagueness challenge must fail."). *But see United States v. Jones*, 689 F.3d 696, 704 (7th Cir. 2012) ("The doctrine surrounding the 'facial' and 'as applied' forms of judicial review is 'currently a subject of hot debate, both in the Supreme Court and among commentators.").

23. Plaintiffs cannot show that the challenged provision is unconstitutional as applied to them.  Plaintiffs display, offer, and sell many items that have been cooled by them, such as soda, milk, eggs, and wine.  (*See, e.g.,* Thornton Test. at 156-58).  To sell "cooled" beer would merely require them to place the beer that is now on the shelves of their respective stores in the refrigerator.  (*Id.* at 157-58; Ricker Test. at 223-24, 227, 230, 233-34; Imus Test. at 417, 431-32).  That Plaintiffs know what is prohibited is demonstrated not only by their admissions, but also by the fact that there have been few citations issued for violations of this provision.  Indeed, Ricker

**22**

and Freedom have never been cited for violating this provision, and Thornton's

citation was because it put a malt product in a refrigeration unit, thinking it was

wine.

24. Still, Plaintiffs maintain that the challenged provision fails to give a precise standard

on the meaning of "cooled," thereby giving the State Excise Police no standards to

prohibit arbitrary enforcement. *See Gresham v. Peterson*, 225 F.3d 899, 908 (7th

Cir. 2000) ("A statute that 'vests virtually complete discretion in the hands of the

police' fails to provide the minimal guidelines required for due process." (quoting

*Kolender*, 461 U.S. at 358)).

25. As an initial matter, the Constitution has "a greater tolerance for enactments with

civil rather than criminal penalties because the consequences of imprecision are

qualitatively less severe." *Hoffman Estates*, 455 U.S. at 498-99. Here, the

challenged provision results in only civil penalties.

26. The challenged provision prohibits the permittee from offering, displaying, or

selling beer that has been iced or cooled by the permittee at or before the time of

sale. Contrary to Plaintiffs' suggestion, the use of these words connotes not only an

intentional act, but also an act that is designed to accomplish a specific goal – the

sale of cold beer. As the Supreme Court noted in *Hoffman Estates*, "[T]he

alternative 'marketed for use' is transparently clear: it describes a retailer's

intentional display and marketing of merchandise. . . . The standard requires

scienter, since a retailer could scarcely 'market' items 'for' a particular use without

intending that use." 455 U.S. at 502.

27. The prohibition on the sale of beer that has been iced or cooled by the permittee is so obvious that the excise police have found few violations of it. Since 2007, there have only been a handful of violations, and most of those involved the permittee placing a product that it did not think was beer into a cooler. Given that officers are trained in investigations, and given the multiple levels of appeal that a permittee can invoke, the enforcement of this provision is not standardless or vague. (*See* Thickstun Test. at 366-68) (testifying about the citation process, the right to an administrative hearing, and the right to seek judicial review).

28. The court therefore finds that Indiana Code § 7.1-5-10-11 is not unconstitutionally vague as a matter of law facially or as-applied. The State's motion for summary judgment on Plaintiffs' due process claim (Count IV) is therefore **GRANTED**.

## 2.    Equal Protection

29. The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const., Art. IV, § 1. "All equal protection claims, regardless of the size of the disadvantaged class, are based on the principal that, under 'like circumstances and conditions,' people must be treated alike, unless there is a rational reason for treating them differently." *LaBella Winnetka, Inc. v. Vill. Of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02 (2008)). For economic legislation, like the challenged provision here, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the

24

**24**

classification drawn by the statute is rationally related to a legitimate government interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (citations omitted).

30. The State has a legitimate interest in limiting the sale of alcohol and, more to the point, a legitimate interest in curbing the sale of immediately consumable beer to minors. *See* Ind. Code § 7.1-1-1-1.

31. Plaintiffs mount a number of arguments in support of their contention that the Indiana alcoholic beverage laws violate their rights to equal protection of the law. The court will begin with their argument that Indiana's "cooled beer" provision discriminates between those that are located in incorporated towns, and those that are located in unincorporated towns. According to Plaintiffs, "this disparate treatment defies common sense."

### a.   Incorporated vs. Unincorporated Grocery Stores, Convenience Stores and Drug Stores

32. Grocery stores or drug stores located in incorporated towns may not sell cooled beer. *See generally*, Ind. Code § 7.1-5-10-11. Plaintiffs' equal protection challenge rests on the argument that grocery stores (whose statutory definition includes convenience stores) and drug stores located in unincorporated towns are not subject to that prohibition. *See* Ind. Code §§ 7.1-3-4-3, -4.

33. Plaintiffs' argument relies on several different statutory provisions dealing with beer retailer's permits. The first of these provides:

**25**

The commission **shall not issue** a beer retailer's permit, **except as otherwise authorized in this title** and subject to the other restrictions contained in this title, to the following persons:

(13) **A person who is not the proprietor of a restaurant** located and being operated on the premises described in the application for the beer retailer's permit, or of a hotel, or of a club, owning, or leasing the premises as a part of it.

Ind. Code § 7.1-3-4-2(13) (emphasis added).

34. The second provides:

The commission may issue a beer retailer's permit as authorized by IC 7.1-3-4-3, only to an applicant who is the proprietor or a drug store, grocery store, confectionery, or of a store in good repute which, in the judgment of the commission, deals in other merchandise that is not incompatible with the sale of beer.

Ind. Code § 7.1-3-4-4.

35. Plaintiffs argue that the phrase "except as otherwise authorized in this title" in Indiana Code § 7.1-3-4-2(13), read in conjunction with Indiana Code § 7.1-3-4-4, means that grocery stores and drug stores may sell cooled beer if they are located in unincorporated towns. In other words, even though the former statutory provision precludes a grocery store or drug store from selling cooled beer pursuant to a beer retailer's permit, the latter trumps it. The State responds that a proper interpretation of the statutory provisions leads to the conclusion that Indiana disqualifies a grocery store or drug store from receiving a beer retailer's permit unless it is a restaurant, hotel, or club. Thus, in order for these businesses to sell cooled beer in unincorporated towns, they must comply with all of Title 7.1's requirements that apply to a beer retailer's permit, including, for example, a restaurant on the premises

that has 25 seats intended for customers to consume food on the premises, the restaurant must have a certain amount of food sales annually, and its servers must go through server training.  (Thickstun Test. at 335-36).  Moreover, to sell carry out cooled beer from a restaurant in an unincorporated town, in addition to the restrictions noted above, the beer must be purchased from a bartender who is permitted by the State (i.e., no self-service), and the purchaser must be over 21 years old to enter the bar area. (*Id*. at 335-338; Poindexter Test. at 113-14).

36. "In Indiana, the lodestar of statutory interpretation is legislative intent, and the plain language of the statute is the 'best evidence of . . . [that] intent." *Estate of Moreland v. Dieter*, 576 F.3d 691, 695 (7th Cir. 2009) (citing *Cubel v. Cubel*, 876 N.E.2d 1117, 1120 (Ind. 2007)).  The court examines the statute as a whole, with the understanding that the statute should be "applied in a logical manner consistent with the statute's underlying policy and goals."  *Cubel*, 876 N.E.2d at 1120.

37. Having considered the plain language of the statutory provisions at issue and its underlying policy and goals, the court finds the Plaintiffs' interpretation of Indiana Code § 7.1-3-4-4 is at odds with Title 7.1's statutory scheme.  The court can think of no reason why the legislature would disqualify grocery stores and drug stores from a beer retailer's permit pursuant to § 7.1-3-4-2(13), and qualify them to have a beer retailer's permit just two sections later.

38. Major Poindexter testified that, in his 27 years with the State, he is unaware of a single instance of a convenience store, grocery store, or drug store (in an unincorporated area) obtaining a beer retailer permit to legally sell cooled beer.

27

**27**

(Poindexter Test. at 116-17).  Corporal Thickstun's experience is the same. (Thickstun Test. at 333-34).   In addition, Mr. Imus from the IPCA admitted he could not identify one convenience store, grocery store, or drug store that was able to sell cooled beer in unincorporated areas by virtue of a beer retailer permit.  (Imus Test. at 429).  In sum, for Plaintiffs to obtain a beer retailer's permit, they would have to completely change their business model to conform to the requirements of Title 7.1.

39. "The equal protection clause requires similar treatment of similarly situated persons; it does not require things which are different in fact or opinion to be treated in law as the same." *Harvey v. Town of Merrillville*, 649 F.3d 526, 531 (7th Cir. 2011). While the similarly situated analysis is not a precise formula, demonstrating that one is similarly situated to another group is "essential to the success" of an equal protection claim and the groups must be "very similar indeed." *Id*. (quoting *LaBella Winnetka, Inc. v. Vill. Of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010)).

40. The court finds that Indiana's "cooled beer" provision, which restricts a business with a beer dealer permit from offering, displaying, and selling beer that has been cooled by it, applies uniformly to Plaintiffs' business model – convenience stores, grocery stores, and drug stores that operate pursuant to beer dealer permits.  As Indiana treats all businesses that hold a beer dealer's permit the same, whether in an incorporated or unincorporated town, Plaintiffs' equal protection claim based on the treatment of grocery stores and drug stores in incorporated versus unincorporated towns must be dismissed.

**28**

### b.    Rational Basis

41. Plaintiffs also argue that this "arcane statute" has no rational basis.

42. "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Federal Commc'n Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  Rational basis review does not authorize "'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.'"  *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam)).  Therefore, a statutory classification is accorded "a strong presumption of validity." *Beach Commc'ns, Inc.*, 508 U.S. at 314-15.  The court must uphold the challenged provision "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 313.  The "'burden is on the one attacking the [classification] to negative every conceivable basis which might support it.'" *Heller*, 509 U.S. at 320-21 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

43. Plaintiffs argue that Indiana's statutory scheme is irrational because: (1) minors are exposed to beer – including cold beer – in all kinds of settings, including festivals, amusement parks and countless events at the State Fairgrounds; and (2) the current state of the law "forces" grocery stores, convenience stores, and drug stores to put

**29**

the beer products out in the open on floors or shelves, making it more visible and accessible to minors, than if it were in a cooler.

44. The issue in this case is whether limiting the sale of immediately consumable cold beer to certain types of businesses – and placing additional restrictions on those businesses – is rational. Thus, whether minors are exposed to cold beer at social events or exposed to "room temperature" beer on convenience-store shelves, is irrelevant.

45. Plaintiffs also argue that Indiana's statutory scheme is irrational because package liquor stores and restaurants, who may sell cold beer, have a compliance[3] rate with Indiana's alcohol laws that is below that of grocery stores, convenience stores, and drug stores. (*See* Findings of Fact ## 36-37).

46. Plaintiffs' reliance on these statistics is misplaced. "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." Beach Commc'ns, 508 U.S. at 315.

---

[3] Plaintiffs' reference to package liquor stores'/restaurants'/taverns' compliance rate as compared to the compliance rate of grocery/convenience/drug stores is problematic. All of the statistics were gathered under the current statutory and regulatory framework, where grocery/convenience/drug stores cannot sell cold beer. It is pure speculation, then, to conclude that these statistics will remain the same if other businesses are allowed to sell cold beer. (*See, e.g.*, Thornton Test. at 163 (testifying that Thornton has not been cited for selling beer to minors in Indiana; however, Thornton's has been cited for selling beer to minors in other states where cold beer is allowed to be sold); Dabulis Test. at 256-57; Thickstun Test. at 343-44 (testifying that a permittee passes the alcohol compliance program merely by asking the minor for identification, and fails to account for the myriad of cases involving a minor's use of fake identification).

Such judicial restraint is necessary "to preserve to the legislative branch its rightful independence and its ability to function," and has "added force where the legislature must necessarily engage in a process of line-drawing." *Id.* (internal quotation marks and citations omitted).

47. The State could have rationally believed that limiting the sale of immediately consumable cold beer to package liquor stores furthers its legitimate goal of curbing underage consumption of alcohol. The court's finding is supported in the record.

48. As noted several times before, package liquor stores are subject to much stricter regulations than grocery/convenience/drug stores. It costs far more for a package liquor store to enter the market than it does a grocery/convenience/drug store; consequently, there are far fewer package liquor stores in the State than grocery/convenience/drug stores. This naturally results in fewer outlets in the State to purchase cold beer.

49. Restaurants and taverns are also subject to stricter regulations than grocery/convenience/drug stores.

50. Corporal Thickstun testified that many more cases are made for violations of Indiana's alcoholic beverage laws when the product involved is cold beer. The majority of those cases involve minors. (Thickstun Test. at 353).

51. Were the law otherwise and grocery/convenience/drug stores were permitted to sell cold beer, the evidence suggests that many more outlets for the sale of cold beer will be constructed, and Indiana's alcoholic beverage laws will be tougher to enforce.

**31**

52. Restricting the sale of cold beer to certain types of businesses and restricting the sale of cold beer only to businesses that have more restrictions placed on them is a classic example of legislative line-drawing.  Indiana's legislative classifications, which serve to limit the outlets for immediately consumable cold beer, is rationally related to the legitimate goals of Indiana's alcoholic beverage laws; opening this market to others without restriction is not.

53. In sum, the State drew a line between package liquor stores, beer retailers, and beer dealers, such as grocery stores, convenience stores, and drug stores.  Plaintiffs essentially argue that the line was drawn incorrectly.  "[L]egislation 'does not violate the Equal Protection Clause merely because the classifications [it makes] are imperfect.'"  *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013) (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)).

54. The State has advanced a plausible reason for the classifications in Indiana's alcoholic beverage statute.  *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("Where, as here, there are plausible reasons for Congress' action, our inquiry is at an end.").  The State's motion for summary judgment on Plaintiffs' equal protection claim (Count I) is therefore **GRANTED**.

**F.     Preliminary Injunction**

55. Plaintiffs request the court preliminarily enjoin the enforcement of Indiana Code § 7.1-5-10-11.

**32**

56. A preliminary injunction is analyzed "in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1085-86 (7th Cir. 2008).

57. Under the threshold phase for preliminary injunctive relief, a plaintiff must establish – and has the ultimate burden of proving by a preponderance of the evidence – each of the following elements: (1) that it has a reasonable likelihood of success on the merits of the underlying claim; (2) that it will suffer irreparable harm in the interim period prior to final resolution of its claim if the preliminary injunction is denied; and (3) that traditional legal remedies would be inadequate. *Id.* at 1086.

58. "If the court determines that the moving party has failed to demonstrate any one of these three threshold requirements, it must deny the injunction." *Id.* (citation omitted).

59. Here, Plaintiffs have failed to establish a reasonable likelihood of success on the merits of their federal and state claims. Accordingly, Plaintiffs' motion for preliminary injunction is **DENIED**.

33

**III.     Conclusion**

The State's Motion for Summary Judgment (Filing No. 77) is **GRANTED**, and

the Plaintiffs' Motion for Preliminary Injunction (Filing No. 44)  is **DENIED**.

**SO ORDERED** this  16th day of June 2014.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

**34**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANA PETROLEUM MARKETERS | ) | |
| AND CONVENIENCE STORE | ) | |
| ASSOCIATION, | ) | |
| THORNTON'S INC., | ) | |
| RICKER OIL COMPANY, INC., | ) | |
| FREEDOM OIL, LLC, and | ) | |
| STEVE E. NOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:13-cv-00784-RLY-DML |
| vs. | ) | |
| | ) | |
| ALEX  HUSKEY, in his official capacity | ) | |
| as Chairman of the Indiana Alcohol and | ) | |
| Tobacco Commission, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

It has come to the court's attention that the court's Findings of Fact and

Conclusions of Law were issued without a ruling on the Plaintiffs' Motion for Summary

Judgment and the Plaintiffs' Motion to Supplement the Record in Support of its Motion

for Preliminary Injunction.

The court has reviewed these filings.  Plaintiffs' Motion for Summary Judgment

raises the same issues as those presented in its Motion for Preliminary Injunction and the

Defendant's Motion for Summary Judgment.  Plaintiffs' Motion to Supplement the

Evidence does not present new evidence; instead, as its title conveys, it seeks to

1

35

supplement evidence the court considered and largely rejected.   Accordingly, for the

reasons explained in the court's Findings of Fact and Conclusions of Law, Plaintiff's

Motion for Summary Judgment (Filing No. 149) is **DENIED** and Plaintiffs' Motion to

Supplement the Evidence (Filing No. 159) is **DENIED**.

A final judgment shall issue in a separate Entry forthwith.


**SO ORDERED** this 20th day of June 2014.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.

2

**36**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


INDIANA PETROLEUM MARKETERS    )
AND CONVENIENCE STORE          )
ASSOCIATION,                   )
THORNTON'S INC.,               )
RICKER OIL COMPANY, INC.,      )
FREEDOM OIL, LLC, and          )
STEVE E. NOE,                  )
                               )
                   Plaintiffs, )
                               )        1:13-cv-00784-RLY-DML
          vs.                  )
                               )
ALEX  HUSKEY, in his official capacity  )
as Chairman of the Indiana Alcohol and  )
Tobacco Commission,            )
                               )
                   Defendant.  )


**FINAL JUDGMENT**


The court's review of the record in this case reflects that all pending motions have

been finally resolved.  Accordingly, the court, having **GRANTED** Defendant's Motion

for Summary Judgment and **DENIED** the Plaintiffs' Motion for Summary Judgment and

the Plaintiffs' Motion for Preliminary Injunction, now issues final judgment in

Defendant's favor and against the Plaintiffs herein.


**SO ORDERED** this 20th day of June 2014.


_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

1

**37**

Laura Briggs, Clerk
United States District Court

_____

By: Deputy Clerk


Distributed Electronically to Registered Counsel of Record.

2

**38**